73220. CANDLER GENERAL HOSPITAL, INC. v. McNORRILL.

(354 SE2d 872)

CARLEY, Judge.

Appellee-plaintiff filed the instant action to recover for a physical injury he allegedly sustained while a patient in appellant-defendant's emergency room. With regard to appellee's injury, the allegations of his complaint were as follows: A "hospital orderly" in the employ of appellant "attempted to remove [appellee] from a stretcher. In so attempting to remove [appellee] from the stretcher, the said orderly could not sustain the weight of [appellee] and 'dropped' [appellee], causing injury to [appellee's] left knee." Based upon these allegations, appellee advanced two legal theories in his complaint as authorizing a recovery against appellant. One theory of recovery was appellant's vicarious liability for the alleged negligence of its employee "in not procuring additional assistance or proper equipment for the removal of [appellee] from the stretcher. . . ." The other theory of recovery was appellant's own direct negligence with regard to the alleged inadequacy of the equipment, facilities and personnel that it provided in its emergency room.

Appellant's answer denied the material allegations of appellee's complaint and raised numerous defenses. After the parties had engaged in discovery, appellant moved for summary judgment. Appellant supported its motion with the affidavit of its employee who had allegedly "dropped" appellee. That affidavit established that the employee was in fact a registered nurse and not an orderly as appellant had alleged. In his affidavit, the nurse gave the following version of the events that had occurred in the emergency room: He had received instructions from appellee's physician "to place a knee immobilizer on [appellee's] right knee and discharge [appellee] from the emergency department." In carrying out these instructions, he had first assisted appellee from a wheelchair to a "casting table" and, at that point, appellee had been "able to stand with all of his weight on his left leg, turn, and sit on the casting table." When appellee then complained that he had also hurt his left knee prior to coming to the emergency room, the nurse secured further instructions from the physician to place an ace bandage on appellee's left knee. After performing these nursing duties but "[b]efore helping [appellee] from the casting table back into the wheelchair, [the nurse] asked [appellee] if he could again stand with all of his weight on his left leg. [Appellee] stated that he could. [The nurse] then stood behind [appellee] and helped him to his feet. At that point, contrary to [appellee's] representation,

he was unable to support himself and threw the whole weight of his body on [the nurse]." The nurse "was not able to fully support [appellee] so [he] slowly brought [appellee] to a sitting position on the floor." The nurse concluded his affidavit by stating that "[a]t all times material hereto in [his] treatment of [appellee], [he] exercised that degree of ordinary care that is in general use under the same, or similar, circumstances in hospitals in the area."

In opposition to appellant's motion, appellee filed his own affidavit. Appellee's version of the events in the emergency room differed significantly from the nurse's. According to appellee's affidavit, his injury occurred in the following manner: The nurse had "never asked [appellee] if [he] could support [his own] weight," and, when the nurse had first attempted to move him to the wheelchair, appellee had questioned whether the nurse "was physically capable of supporting [his 292 pound] weight and [he] specifically suggested that [the nurse] obtain additional assistance in so removing [him] from the stretcher." The nurse had responded by giving appellee assurances of being physically capable of supporting appellee's weight and he then proceeded to move appellee. However, "[u]pon so doing the nurse failed to support [appellee's] weight and dropped [him] causing [him] to strike [his] left knee forcefully on the floor and base of the stretcher."

The trial court conducted a hearing on appellant's motion for summary judgment. In its order, the trial court stated that it was appellant's "contention that summary judgment [was] proper on the basis of [the] expert testimony [in the nurse's affidavit] since this is a medical malpractice case in which [appellee] is required to submit expert testimony in order to recover." Although the trial court ruled that the instant case was a medical malpractice action, it also concluded that the "pronounced results" exception was applicable and therefore no expert medical testimony on behalf of appellee was required. See generally *Killingsworth v. Poon*, 167 Ga. App. 653 (307 SE2d 123) (1983). Finding that the conflicting versions of the events as recounted in the nurse's and appellee's affidavits created a genuine issue of material fact, the trial court denied appellant's motion for summary judgment but certified its order for immediate review. Appellant's application to this court for an interlocutory appeal was granted and the instant appeal results.

1. With regard to appellant's direct liability for appellee's injury, the complaint, as noted previously, alleged that appellant was itself negligent in furnishing inadequate equipment, facilities and personnel for patients in its emergency room. In determining whether a hospital itself has been negligent in connection with the facilities and services that it furnishes, the appropriate standard by which to measure those facilities and services is the so-called "locality rule." " 'A hospital

owes to its patients only the duty of exercising ordinary care to furnish equipment and facilities reasonably suited to the uses intended and such as are in general use under the same, or similar, circumstances in hospitals in the area.' . . . The facilities of a small county hospital cannot be measured against a larger, better equipped urban hospital. While a small county hospital may certainly be considered negligent in its handling of a patient, the care given a patient in such a hospital may only be measured against what can be determined as reasonable care *under the same or similar circumstances.*" (Emphasis in original.) *Smith v. Hosp. Auth. of Terrell County*, 161 Ga. App. 657, 658-659 (288 SE2d 715) (1982). The affidavit of appellant's nurse does not purport to address the question of whether the facilities and services that were provided in appellant's emergency room were comparable to those furnished by such other hospitals as function under the same or similar circumstances as does appellant. Compare *Smith v. Hosp. Auth. of Terrell County*, supra at 659, noting that "the evidence in the case included testimony from experts familiar with various small county hospitals in other counties similar to Terrell County." Instead, the nurse's affidavit deals exclusively with *his own* conduct. As such, the affidavit relates only to the issue of appellant's asserted vicarious liability for the conduct of its nurse. There being no evidence adduced which was relevant to the issue of appellant's own direct liability for appellee's injury, the trial court did not err in denying summary judgment as to that theory of recovery. See generally *Wade v. John D. Archbold &c. Hosp.*, 252 Ga. 118 (311 SE2d 836) (1984); *Macon-Bibb County Hosp. Auth. v. Ross*, 176 Ga. App. 221, 223 (1) (335 SE2d 633) (1985); *Candler Gen. Hosp. v. Joiner*, 180 Ga. App. 455 (349 SE2d 756) (1986).

2. Were appellee's allegations as to appellant's vicarious liability to constitute a "medical malpractice" claim, it is likewise clear that it would not have been error to deny appellant's motion for summary judgment as to that claim. This result would not, however, stem from application of the "pronounced results" exception but from the insufficiency of the affidavit of appellant's nurse. The nurse's affidavit states only that his conduct comported with the "locality rule," whereas the applicable "standard of care which should be applied to a [professional in a malpractice action] is that ordinarily employed by the profession generally. [Cit.]" *Wade v. John D. Archbold &c. Hosp.*, supra at 119. Under the "right for any reason" principle, this insufficiency of the nurse's affidavit would perhaps be an adequate rationale upon which to base an affirmance of the denial of summary judgment as to appellant's vicarious liability in the context of a medical malpractice action.

However, simply because an alleged injury occurs in a hospital setting, a suit to recover for that injury is not necessarily a "medical

malpractice" action. See generally *Self v. Executive Committee*, 245 Ga. 548 (266 SE2d 168) (1980). Likewise, not every suit which calls into question the conduct of one who happens to be a medical professional is a "medical malpractice" action. A professional malpractice action is merely a professional negligence action and calls into question *the conduct of a professional in his area of expertise*. "In malpractice actions against professionals, it is essential to the plaintiff's cause of action that competent evidence be presented as to the reasonableness and skill of the practitioner's conduct. Except in clear and palpable cases, expert testimony is necessary to establish the parameters of acceptable professional conduct, a significant deviation from which would constitute malpractice. [Cits.]" *Self v. Executive Committee*, supra at 549.

In the instant case, there is no evidence indicating that appellee's underlying medical condition was such that *only* an employee of appellant with professional medical training would have been authorized to undertake the act of moving him into the wheelchair. That the employee of appellant who did undertake the act of moving appellee was a registered nurse rather than an orderly appears to be no more than a mere circumstance of appellee's discharge from the emergency room rather than a medical aspect of his treatment. If the alleged negligent act or omission of a hospital employee does not require the exercise of expert medical judgment, the fact that the employee also has expert medical credentials does not make the case one of "medical malpractice." "The hospital may be liable for the negligent acts of its servants and employees in carrying out the physician's instructions in performing administrative or clerical acts requiring no medical judgment. [Cits.]" *Swindell v. St. Joseph's Hosp.*, 161 Ga. App. 290, 291 (1) (291 SE2d 1) (1982). The decisive factor in the injury forming the basis of this litigation was not a medical misjudgment, but was apparently either a subjective misjudgment on appellee's part as to his own physical ability to assist in his attempted transfer or an objective misjudgment on the part of one of appellant's employees, who happened to be a nurse, as to his own physical ability to support all 292 pounds of appellee's weight. Compare *Cherokee County Hosp. Auth. v. Beaver*, 179 Ga. App. 200 (345 SE2d 904) (1986), wherein the plaintiff attributed his injury to a nurse's act of administering an injection. Thus, under all of the evidence of record, the safe movement of appellee from the stretcher or casting table to the wheelchair was merely an act of relative physical strength and dexterity rather than an act requiring the exercise of expert medical judgment. "The protection of patients is not a medical function of a hospital. . . ." *Johnson v. Wills Memorial Hosp.*, 178 Ga. App. 459, 461 (343 SE2d 700) (1986).

Since the decision to undertake the physical act of moving appellee did not involve any medical questions or the exercise of any pro-

fessional medical judgment, the vicarious liability claim against appellant does not purport to be a "medical malpractice" action and, consequently, expert medical testimony as to the standard of nursing care in undertaking to move appellee would be unnecessary. "In the case now under consideration, the cause of action [based upon vicarious liability] is not based upon professional malpractice, but on a simple negligence theory against a hospital. There is no requirement that expert testimony must be produced by a plaintiff to a negligence action in order to prevail at trial." *Self v. Executive Committee,* supra at 549. Compare *Cherokee County Hosp. Auth. v. Beaver,* supra. Accordingly, although the trial court erroneously construed appellee's vicarious liability claim as constituting a "medical malpractice" action coming within the "pronounced results" exception to the expert testimony requirement, the denial of summary judgment was nonetheless proper. A genuine issue of material fact remains as to whether, as appellee related, he was negligently dropped by appellant's employee or, as appellant contended, its employee acted in a non-negligent manner by merely providing appellee with assistance in his effort to stand.

3. As discussed in Division 1, the trial court did not err in denying appellant's motion for summary judgment as to its alleged direct liability. As to this "hospital malpractice" claim, it will be incumbent upon appellee to prove at trial, by expert testimony, a deviation from the "locality rule" as regards the facilities and services provided to patients in appellant's emergency room. As discussed in Division 2, the trial court did not err in denying appellant's motion for summary judgment as to its alleged vicarious liability. As to this "simple negligence" claim, it will not be necessary for appellee to prove, by expert medical testimony, a deviation by the nurse from any "general standard" of care regarding the physical act of moving patients.

*Judgment affirmed. McMurray, P. J., and Pope, J., concur.*

DECIDED MARCH 11, 1987.

*Frank W. Seiler, Wiley A. Wasden III,* for appellant.
*John W. Jones, Sage Brown, Noble L. Boykin, Jr.,* for appellee.