## A99A1376. STRICKLAND v. HOSPITAL AUTHORITY OF ALBANY/DOUGHERTY COUNTY et al.
### (525 SE2d 724)

RUFFIN, Judge.

Bobbie Strickland, as executor of the estate of his wife, Gloria Strickland, sued the Hospital Authority of Albany/Dougherty County d/b/a Phoebe Putney Memorial Hospital, as well as several employees of the hospital, alleging that the defendants negligently injured his wife. At the close of the evidence, the defendants moved for a directed verdict. The trial court reserved ruling on the motion and sent the case to the jury. The jury found in favor of Strickland and awarded $105,000 in damages. Following the verdict, the trial court granted the defendants'. motion for directed verdict. Strickland appeals, asserting three enumerations of error. For reasons that follow, we reverse.

In 1984, Gloria Strickland was diagnosed with breast cancer. As a result of the cancer, her bones became so fragile that she was unable to bear her body's weight, and she could not stand or walk. If she needed to be moved, her husband would lift her by putting one arm under her legs and his other arm around her back before picking her up.

On November 8, 1990, the Stricklands went to Phoebe Putney Memorial Hospital for Mrs. Strickland's radiation therapy. Prior to receiving radiation therapy, she was sent for an MRI. Mr. Strickland took his wife to the MRI building in a wheelchair. Once there, they met with two MRI technologists, Adrienne Cadwell and Deborah

Lloyd, who informed the Stricklands that Mrs. Strickland needed to change into a gown. Because Mr. Strickland knew how to handle his wife, he volunteered to dress her in the gown. The technologists also suggested that Mrs. Strickland use the rest room prior to the procedure, and her husband took her there.

When the time came for the MRI, the technologists told the Stricklands that Mrs. Strickland would have to be moved to a stainless steel wheelchair. Once again, Mr. Strickland volunteered to move his wife, but the technologists said that they would do it. Mr. Strickland warned the technologists that his wife's legs were extremely fragile and that she could not bear any weight on them. He also demonstrated the technique he used to lift his wife.

After Mr. Strickland returned to the sitting area, he heard a loud snap followed by his wife screaming, "You broke my leg. My leg is broke." He ran back into the room and saw the technologists holding his wife in an upright position. Mr. Strickland testified that he could see that his wife's right leg was broken between the knee and the hip. Following this incident, Mrs. Strickland was hospitalized for 28 days, and the Stricklands incurred over $18,000 in medical expenses related to the broken leg.

In granting the defendants' motion for directed verdict, the trial court found that the case involved professional rather than ordinary negligence. The trial court concluded that a directed verdict was warranted because Strickland failed to introduce expert testimony to establish the requisite standard of care. The trial court further found that there was no evidence of ordinary negligence.

1. In his first enumeration of error, Strickland argues that the trial court erred in granting a directed verdict in favor of defendants. Strickland maintains that this is a case of ordinary, rather than professional, negligence and that there was evidence of ordinary negligence. We agree.

(a) As an initial matter, we must address whether the negligence alleged by Strickland constitutes ordinary or professional negligence. Not all injuries that occur in a medical setting "are the result of professional negligence; they may be solely attributable to ordinary or simple negligence."[1] "Whether the negligence alleged by a plaintiff is ordinary negligence or professional malpractice is a question of law."[2]

In its order, the trial court concluded that this was a case of professional negligence because the hospital personnel had received medical training and had exercised professional judgment in moving Mrs. Strickland. However, the mere fact that the technologists had

[1] *Moore v. Louis Smith Mem. Hosp.*, 216 Ga. App. 299 (454 SE2d 190) (1995).
[2] *Dent v. Mem. Hosp. of Adel*, 270 Ga. 316, 318 (509 SE2d 908) (1998).

medical credentials does not make the case one of professional malpractice.[3] If the alleged negligent act of the hospital employees did not require the exercise of expert medical judgment, the fact that the employees had expert credentials would not transform the case into medical malpractice.[4]

Mrs. Strickland was injured while being moved from one wheelchair to another wheelchair. Contrary to the defendants' contention, "[t]he record does not show . . . that this aspect of [Mrs. Strickland's] care was required to be performed by a person with medical training or that it involved the exercise of medical judgment or required medical expertise."[5] Rather, the record demonstrates that Mr. Strickland, who was not a medical professional, successfully moved his wife twice immediately prior to relinquishing her care to the medical professionals. Mr. Strickland offered to move his wife into the second wheelchair. According to Lloyd, the only technologist to testify at trial, she had no particular reason for declining Mr. Strickland's offer other than "convenience." Accordingly, Lloyd's own testimony supports the conclusion that medical training and expertise were not required to move Mrs. Strickland. Under these circumstances, "the safe movement of [Mrs. Strickland] from [one wheelchair] to [another] wheelchair was merely an act of relative physical strength and dexterity rather than an act requiring the exercise of expert medical judgment."[6] Accordingly, the trial court erred in concluding that this case involves professional negligence.

(b) The trial court also erred in directing a verdict in favor of defendants. A trial court should direct a verdict "only if there is no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom, shall demand a particular verdict. OCGA § 9-11-50 (a)."[7] In considering whether the trial court erred by granting the defendants' motion for directed verdict, "we review and resolve the evidence and any doubts or ambiguities in favor of . . . the party opposing the motion for directed verdict."[8]

Viewing the evidence in favor of the Stricklands, we find that there is some evidence from which jurors could have concluded that the defendants were negligent. The record shows that Mr. Strickland told the technologists that his wife could not bear any weight at all

[3] *Jones v. Bates*, 261 Ga. 240, 242 (2) (403 SE2d 804) (1991).

[4] *Dent*, supra.

[5] *Moore*, supra at 300.

[6] *Candler Gen. Hosp. v. McNorrill*, 182 Ga. App. 107, 110 (354 SE2d 872) (1987).

[7] (Punctuation omitted.) *Grubb v. Woodglenn Properties*, 220 Ga. App. 902, 903 (1) (470 SE2d 455) (1996).

[8] (Punctuation omitted.) *Plane v. Uniforce MIS Svcs.*, 232 Ga. App. 757, 758 (503 SE2d 621) (1998).

on her legs and he demonstrated the technique that he employed to lift his wife by putting one arm under her legs and his other arm around her back. The testimony is undisputed that the technologists did not lift Mrs. Strickland in the manner suggested by her husband, but lifted her by her arms. Although defendants contend that Mrs. Strickland never bore any weight on her legs, the evidence was sufficient to permit the jury to conclude otherwise. According to Mr. Strickland, the technologists held his wife in an upright position, which supports the inference that she bore at least some weight on her legs. When her leg broke, Mrs. Strickland cried out "You broke my leg," which suggests that she attributed her injury to the actions of the technologists.[9] In view of the evidence that the technologists assumed the responsibility for lifting Mrs. Strickland and, in so doing, ignored Mr. Strickland's suggestions for safely lifting his wife, we cannot agree with the trial court's conclusion that there was no evidence of negligence.[10]

2. In view of our holding in Division 1, we need not address Strickland's remaining enumerations of error.

*Judgment reversed. Johnson, C. J., McMurray, P. J., Pope, P. J., Smith and Eldridge, JJ., concur. Andrews, P. J., dissents.*

ANDREWS, Presiding Judge, dissenting.

Because I believe the trial court correctly determined that this case involved an issue of professional negligence, I respectfully dissent.

The only evidence at trial as to what happened when the hospital employees tried to move Mrs. Strickland came from the employees themselves. The deposition of Deborah Lloyd, the radiology technician, was read at trial, and in it she described the procedure they were using to move Mrs. Strickland from one wheelchair to the other. She said the wheelchairs were placed facing each other with about eight inches between them and she and the other technician stood on either side of Mrs. Strickland and the procedure was to "actually pick the patient up, pivot to the next chair, but before we got that far is when we heard the fracture." Lloyd stated that Mrs. Strickland's feet would have been touching the floor but she and the other technician were supporting her weight.

---

[9] Defendants do not challenge the admissibility of this statement. Although it arguably constitutes hearsay, the trial court apparently treated it as an exception to the prohibition against hearsay, which it was authorized to do. See *Sutton v. Winn Dixie Stores*, 233 Ga. App. 424, 426 (504 SE2d 245) (1998) (excited utterances come within the res gestae exception to the hearsay rule).

[10] See *McNorrill*, supra at 110-111 (2) (issue of fact existed regarding whether hospital employee was negligent); *Brown v. Durden*, 195 Ga. App. 340 (393 SE2d 450) (1990) (physical precedent) (jury issue existed regarding whether medical assistant exercised due care).

Lloyd also testified as follows:

Q. Were you ever given any sort of formal instruction of any sort on how you determine the method you use to transfer a patient?
A. I had my education in school, which you have your basic biomechanics of moving patients, and then experience in talking with the patients also decides what is best for that patient.

Lloyd said that it was a judgment call as to how she would move the patients, depending on what she thought would be best under the circumstances.

Jean Sancken, another employee who stood behind the wheelchair to secure it, testified by deposition that she was behind one wheelchair and that the wheelchairs were facing each other. She could not remember exactly what happened. All she could say was that Mrs. Strickland was not even standing up yet, "they had just barely moved her" when "she let out a scream or a moan or something."

In concluding that the trial court erred in finding this was a case of professional negligence, the majority cites to *Candler Gen. Hosp. v. McNorrill*, 182 Ga. App. 107 (354 SE2d 872) (1987). But, in *McNorrill*, the only claim advanced was that the nurse was unable to " 'sustain the weight of [the patient].' " Id. Therefore, *McNorrill* is inapplicable here as there was no evidence that the technicians were unable to bear Mrs. Strickland's weight.

Similarly, in *Moore v. Louis Smith Mem. Hosp.*, 216 Ga. App. 299 (454 SE2d 190) (1995), the record did not show that any expertise was involved in getting the patient into bed and the only claim was that the hospital employee did not exercise enough " 'physical strength and dexterity' " in moving the patient. Id. at 300.

*Holloway v. Northside Hosp.*, 230 Ga. App. 371 (496 SE2d 510) (1998), however, is on point because the issue was whether the nurses failed to exercise proper care to prevent the patient from falling. In *Holloway*, this Court concluded that expert testimony would be required to determine whether the nurses deviated from the applicable standard of care. Id. at 372.

Here, Lloyd's undisputed testimony was that she decided how to move the patient based on her training and experience. There was no evidence as to how or why the injury occurred. The undisputed evidence of the only people present at the time was that Mrs. Strickland did not put any weight on her leg during the attempted move. Therefore, from the evidence presented at trial, it was not possible for the jury to determine whether the technicians were negligent in moving

Mrs. Strickland.

Moreover, although Mr. Strickland testified as to the method he used to move his wife, he had no training in the proper way to move patients and the mere fact that he had moved his wife without injury up to this point does not necessarily show that his method was the correct or preferred one. Indeed, there was testimony at trial that Mrs. Strickland's bones were very fragile and she suffered other breaks after the one to her leg. Thus the only way to show that the technicians deviated from the requisite standard of care was, as the trial court correctly determined, by expert testimony.[11] See *Lamb v. Candler Gen. Hosp.*, 262 Ga. 70, 71 (413 SE2d 720) (1992) (if the plaintiff cannot establish negligence and causation without expert testimony, the case is generally a professional malpractice action).

Therefore, because Lloyd testified that she had received training in how to move patients and that she determined the best method of moving the patient based on her training and experience, and because Strickland argues that the technicians knew or should have known that moving Mrs. Strickland in a certain way would subject her to harm, this case is a professional negligence action. *Holloway*, supra at 372. Because there was no expert testimony on the applicable standard of care, the judgment of the trial court should be affirmed.

DECIDED NOVEMBER 18, 1999 — 

*John T. Croley, Jr., Terrence J. Paulk*, for appellant.
*Langley & Lee, Carl R. Langley*, for appellees.

---

[11] That the jury was confused is apparent from a note sent out during deliberations. The note asked: "If the plaintiff is rewarded, does this mean Lloyd is negligent? We do not think she is negligent."