No. 10.—PROTHRO & KENDALL, plaintiffs in error, *vs.* MATTHEW ORR *et al.* defendants in error.

[1.] The 5th section of the Act of 1809, (*Prince*, 117) and the 3d section of the Act of 1823, (*Prince*, 183,) declared to be unconstitutional and void, on the ground that they contain matter *different* from what is expressed in the titles of the Acts, to which they respectively belong.

Debt, on Sheriff's bond, in Pike Superior Court. Tried before Judge STARK.

This was an action of debt brought by Prothro & Kendall, against Matthew Orr and his securities, upon the official bond of Orr, as Sheriff of Pike County, for money alleged to have been collected by him on a *fi. fa.* in favor of Prothro and Kendall, against one Joseph B. Askew.

The defendants, among other things, pleaded a former recovery upon the said bond, by Reuben Brown, to the amount of the damages sustained by Brown, in consequence of Orr having collected and failed to pay over money on certain *fi. fas.* placed in his hands, in favor of Brown.

Upon the trial it appeared in evidence, that Orr was elected Sheriff of Pike County, on the 3d day of January, 1842, and executed his bond on the 11th day of February, ensuing.

The Court charged the Jury, "that the bond sued on, was a Common Law bond, not having been given within the time prescribed by the Statute, and that the judgment rendered in the case of The Governor, for the use of Reuben Brown, against Orr and his securities, was a bar to the plaintiff's right to recover in this action."

The Jury found a verdict for the defendants; whereupon, counsel for plaintiff moved the Court for a new trial, upon the grounds, among others, that the Court erred, in charging the Jury that the bond sued on, was a Common Law bond, and that the recovery in the case of Brown, was a bar to the plaintiff's right of action."

Prothro & Kendall *vs.* Orr *et al.*

The Court refused to grant a new trial, and this decision is assigned as error.

Counsel for Prothro and Kendall, then moved the Court to have the verdict and judgment rendered in the case of The Governor, for the use of Brown, against Orr and his securities, corrected, by entering it up for the sum of $20,000, the penal sum of the bond, in lieu of $984.00, the amount of the damages sustained by Brown, and the amount for which the verdict and judgment had been rendered; so that by *scire facias*, they, the said Prothro and Kendall, might come in and have their claim against Orr satisfied.

The Court refused the motion, and this decision is assigned as error.

O. C. GIBSON, for plaintiff in error submitted:

That there had been no former recovery on the bond sued on, and that the bond was given in compliance with the Statute. *Prince*, 177, 178. *Cobb's Digest*, 502, 200, 208, 1114, 1142. 1 *Kent*, 394. 1 *Kelly*, 380. 3 *Geo. Rep.* 499.

H. & G. J. GEENE, submitted the following points, and authorities for the defendants in error.

1. The *amount* of the verdict found by the Jury, on the trial of the action pleaded in bar, was not the criterion by which the Court was, or should have been governed, in ascertaining its legal effect, when pleaded to a second suit founded on the same bond, but only the fact whether or not there had been a former recovery on the same bond. See 3 *Kelly*, 499. In that case, the first recovery pleaded in bar was for less than the penalty of the bond.

2. The record of a former recovery pleaded and introduced, showed that that action was founded upon the same bond that the present one is, and in favor of the same plaintiff, (*Crawford, Gov. &c.*) against the same defendants, but for the use of differ-

ent individuals.   But one recovery can be had upon a Common Law bond.   3 *Kelly*, 499.

3. The bond sued on, is a Common Law bond, it not having been given within 30 days after the election of Orr.   See *Stephens and others vs. Crawford*, 1 *Kelly*, 574.   Same, 3 *Kelly* 499. *Crawford*, *Gov. &c. vs. Howard*, 9 *Geor.* 314.

4. The facts sought to be proven by Wiley E. Mangham, were irrelevant to any issue before the Court, and were properly rejected.   See 10 *Geo. Reps.* 560.   The plaintiff stated no object or legal purpose for which he sought to introduce the testimony, neither does this bill of exceptions show for what purpose the testimony of Mangham was offered.

5. As to the refusal of the Court to amend the verdict and judgment, see 2 *Kelly*, 341.   8 *Geo. Rep.* 208.

*By the Court.*—LUMPKIN, J. delivering the opinion.

This is an action of debt, brought by the Governor, &c. for the use of George Prothro and Elisha Kendall, against Matthew Orr, the late Sheriff of Pike County, and his securities on his bond, for an alleged default, in failing to pay over money collected for the plaintiffs, on a *fi. fa.* at their instance, against one Joseph B. Askew.

To this action, the defendants pleaded, among other things, that the instrument sued on was not a statutory, but a Common Law bond, because the same was not made and delivered within thirty days from the time of the election of Orr to the office of Sheriff, as required by the Statute ; and that one recovery having been had thereon already, in behalf of the then Governor, for the use of one Reuben Brown, there could be no other suit established on said bond, for the recovery of the whole, or any portion of the penalty thereof.   The plaintiff moved to strike out the plea of former recovery, upon the ground that the instrument sued on, was a statutory and not a voluntary bond ; and that the plea did not show that the whole penalty of the bond had been exhausted, which was $20,000, but that a recovery in favor of Brown, was had in the sum of $964.47 principal, and $385.85

interest, and the sum of $26.25 cost only, it being the amount of damages which he had sustained in the premises.

The Judge of the Circuit Court, acting upon the adjudication of this Court, as it was his duty to do, overruled the demurrer to the defendant's plea, and this is the only alleged error in the bill of exceptions, which we find it necessary to consider.

[1.] The Act of 1809, requires the Sheriff to make application for his commission to the Executive, within twenty days after being elected to the office. (*Prince,* 177.) The Act of 1811, bound the Sheriff, in ten days after being notified of the arrival of his commission, to take the oath of office, and give the security required by law. (*Ibid,* 178.) And the Act of 1823, declared the office vacant, provided the officer elected failed to apply for and obtain his commission, and qualify within the time prescribed by the Acts of 1809 and 1811. *Ibid.* 183.

Now the construction heretofore put upon these several Statutes by this Court was, that more than thirty days must not intervene between the election of the Sheriff and the date of his bond. In this case the election took place on the third day of January, 1842, and the bond was given on the 11th of February next ensuing. Consequently the presiding Judge pronounced the bond not good as a statutory bond. And if there was error in this judgment, the fault is *ours,* not *his.*

It is again argued, however, and we must say with great force, that more than thirty days might necessarily elapse between the time of the election and the execution of the bond, and that still its validity as a statutory bond would not be destroyed. The Sheriff might, from circumstances beyond his control, be unable to apply for his commission, until the last day of the twenty allowed him for that purpose. Owing to the press of business in the Executive department, he might not be able to procure immediately from the Governor, the *dedimus potestatem.* Indeed, the commission might in many cases, not reach its place of destination, until more than ten days had expired from the time of the application; and it would seem that this delay should not invalidate the bond.

Taking the whole of these Acts together, the true construction

would seem to be, that the officer must apply for his commission within *twenty* days; and that he must qualify and give security within *ten* days from the time he is notified of the arrival of his commission; and that failing to perform either of these requirements, his office is vacated; but that the time which may intervene between the application of the Sheriff for his commission and of his being notified of its arrival, is not fixed by law; and may or may not postpone the final qualification of the officer, beyond thirty days; and that he is not responsible for the delay.

But then, on the other hand, it was obviously the true intent of the Legislature, to prescribe a limited period for the qualification of the new officer, and that that period is thirty days; and that it is not hard to hold, that while twenty days are allowed to the Sheriff elect, within which to apply for his commission; he must, nevertheless, upon the peril of forfeiture, apply early enough to insure his qualification within the thirty days designated.

Leaving this point, therefore where it stands by our previous adjudications, we are compelled, however reluctantly, to decide upon this question, in the new aspect in which it is presented, for the first time by counsel, namely: the constitutionality of those provisions in the Acts of 1809 and 1823, which make it obligatory upon the Sheriff to apply for his commission within twenty days after his election, upon pain of losing his office. We say we approach this subject with reluctance, not only because the duty itself, is one at all times of great delicacy, but we cannot shut our eyes to the fact, that owing to the haste of much of our legislation, many of our Statutes will be found, we fear, upon close scrutiny, to be obnoxious to the same objection.

But when the question is, whether we shall maintain a Statute or the Constitution, which is the paramount law, and which we are constrained by our oath of office to support and defend, we cannot hesitate. We must maintain consciences void of offence, whatever we do or omit to do. I am aware of the importance of adhering to decisions, once solemnly made. It has been

Prothro & Kendall *vs.* Orr *et al.*

truly said, that a greater evil can scarcely attend a Court, than that the decisions of such a tribunal should be unstable and fluctuating. There is, however, a greater evil than this, and that is to forfeit one's self-respect, by committing deliberate perjury, in the sight of high heaven.

We propose then, briefly to examine the Acts of 1809 and 1823, for the purpose of ascertaining whether or not, they contain any matter *different* from what is expressed in their respective titles. For if they do, the same is at least *pro tanto* void.

The Act of 1809, purports to be " an Act to authorize the Clerks of the Courts of Ordinary, Sheriffs, Coroners and Surveyors, to hold their office, during the intervention between the election and commissioning of their successors, and to regulate the transfer of papers and money. *Prince*, 177. The preamble recites, that " whereas, considerable evils may result from the suspension of duties incumbent upon the Clerks of the Superior and Inferior Courts, Clerks of the Courts of Ordinary, Sheriffs, Coroners, and County Surveyors, for remedy whereof, be it enacted,

" Sec. 1. That the aforesaid officers shall perform all the duties of their respective offices, during the time intervening between the election and commissioning of their successors, with all the responsibilities to which they are liable, previous to the said election."

Here then, is the clause intended to provide a remedy for the evil complained of, and it is full and complete for that purpose. Subsequent enactments provide for the transfer of papers and money, the other and secondary object designated in the title to the Act of 1809. Then follows the 5th section, making it the duty of the officers elected, to make application to the Executive, within twenty days, for their respective commissions, after their having been elected to either of said offices.

What has this to do with that portion of the title, which authorizes the old Sheriff to hold his office until his successor is qualified, or which regulates the transfer of papers and money, from one to the other? Absolutely nothing. Had the title been general—as for instance, an Act in relation to the public officers,

or for the particular objects designated, *and for other purposes*—the construction would have been different. But here the title is *definite*, and therefore, necessarily limited. And to permit other and totally different matter to be incorporated, would be to let in the very mischief intended to be prevented; and thus render the Constitution of none effect.

The objection to the Act of 1823, is more plain and palpable still. Its title is " *an Act to carry into effect the sixth section of the fourth article of the Constitution,* (*Prince,* 183,) which is in these words: " No person who heretofore hath been, or hereafter may be a collector or holder of public moneys, shall be eligible to any office in this State, until such person shall have accounted for and paid into the treasury, all sums for which he may be accountable or liable." *Prince,* 912. And the first section of the Act of 1823, declares in substance, that no holder of public moneys shall be commissioned to any office, while in default. Section second, requires the person elect, in addition to the oath of office, to swear, that he is not the holder of any public moneys unaccounted for.

Thus far, the Act was in strict conformity with its title. But then follows the *third* section, declaring that all officers who shall fail to apply for and obtain their commissions and certificates, and qualify within the time and in the manner heretofore pointed out by law, viz: by the Acts of 1809 and 1811, shall not only forfeit their offices, but be ineligible to the vacancy.

Can any thing be more foreign from the title of this Act, than the matter contained in this section? We cannot do otherwise than pronounce the *fourth* section of the Act of 1809, and the third section of the Act of 1823, unconstitutional and void. And that no time being fixed for applying for commissions, and no penalty attached for failure to do so, that bond in this case, is good as a statutory bond, it having been given within a reasonable time after the election, and having all the other formalities required by law.

It has been suggested, that the prohibition in the seventeenth section of the first article of the Constitution, " nor shall any

law or ordinance pass, containing any matter *different* from what is expressed in the titles thereof," is directory only to the Legislative and Executive or law-making departments of the government. But we do not so understand it; on the contrary, we consider it as much a matter of judicial cognizance, as any other provision in that instrument. If the Courts would refuse to execute a law suspending the writ of *habeas corpus*, when the public safety did not require it; a law violatory of the freedom of the press, or trial by Jury, neither would they enforce a Statute which contained matter *different* from what was expressed in the title thereof.

We are familiar with the history of this clause in the Constitution, and the striking event which gave rise to it. The necessity for its observance increases with each successive session of the Legislature.

For the truth of this remark, I need only appeal to the evidences of haste and inadvertence spread broad-cast on our Statute book. It is a common practice to pass bills by their title only, without requiring them to be read, in their progress through each branch of the General Assembly. To prevent fraud and surprise, how important it is, that the members should be notified at least, by the *title* of the Act, of the subject-matter about which they are legislating; at any rate, that they should not be misled by the title.

It is unnecessary to examine any other point made by the record, as the plaintiffs will be entitled to a recovery, provided they can make out their case in other respects.