### S90A0894. CREEL v. COTTON STATES MUTUAL INSURANCE COMPANY et al.
(397 SE2d 294)

BELL, Justice.

We granted certiorari in this case to review whether the action of appellee Cotton States Mutual Insurance Company against appellant Richard Creel should have been dismissed on the ground Cotton States did not file with its complaint an expert affidavit pursuant to OCGA § 9-11-9.1. That statute provides that in an action alleging professional malpractice a plaintiff must attach to his or her complaint an expert affidavit setting forth the specific act or acts constituting professional malpractice. We find that no expert affidavit was required in the present case, because Cotton States' action against Creel is not one of professional malpractice but one of simple negligence.

Creel's business is the design, negotiation, and implementation of structured settlements utilizing annuities and financial plans. In 1985 Cotton States contacted Creel and requested that he provide Cotton States with several structured settlement plans that could be used to settle a lawsuit against Cotton States. Cotton States decided to use one of the annuities proposed by Creel and settled the lawsuit. The annuity chosen by Cotton States provided, as part of the plan, for the payment of $500 per month for a ten-year period. However, Executive Life Insurance Company, the company providing the annuity, calculated the price of the annuity based on the payment of $500 per *year* for the ten-year period in question. Consequently, the premium originally paid by Cotton States was insufficient to fund the annuity. When Executive Life discovered the discrepancy and learned that the annuity had to provide $500 per month for the ten-year period, Executive Life required Cotton States to pay an additional premium of about $13,000.

Thereafter, Cotton States instituted the instant action, contending that Creel negligently informed Executive Life, either personally or through another agent, that the annuity had to provide $500 per year for the ten-year period, not $500 per month. Creel moved to dismiss based on § 9-11-9.1. Creel contended that he was a professional within the meaning of § 9-11-9.1, and that Cotton States should have attached an expert affidavit to its complaint. Cotton States opposed Creel's motion, contending that Creel was not a professional within the meaning of § 9-11-9.1, and that, even if Creel were a professional

within the meaning of the statute, an expert affidavit was not required because Cotton States' action was one based on simple negligence, not professional malpractice.

The trial court denied Creel's motion on the ground that § 9-11-9.1 was inapplicable to Cotton States' claim against Creel, and the Court of Appeals denied Creel's application for interlocutory appeal. We then granted certiorari to examine whether an affidavit alleging professional malpractice was required. We now affirm the trial court's judgment, concluding that, even if Creel is a professional within the meaning of § 9-11-9.1, Cotton States was not required to file an affidavit under § 9-11-9.1 because Cotton States' action against Creel is not a professional malpractice action but a simple negligence action. In *Central Georgia EMC v. Southern Engineering Co.*, 260 Ga. 409, 410 (395 SE2d 809) (1990), we recognized that

> there are instances in which actions performed by or under the supervision of a professional are nevertheless not professional acts constituting professional malpractice, but, rather, are acts of simple negligence which would not require proof by expert evidence. See, e.g., *Piedmont Hosp. v. Milton*, 189 Ga. App. 563, 564 (377 SE2d 198) (1988); *Candler General Hosp. v. McNorrill*, 182 Ga. App. 107 (354 SE2d 872) (1987); *Self v. Executive Committee*, 245 Ga. 548 (266 SE2d 168) (1980).

In the present case, Cotton States does not allege that Creel failed to exercise proper expertise in designing the annuity plan; rather, Cotton States alleges that Creel was negligent in transmitting to Executive Life information regarding the regularity of the payment of the $500 for the ten-year period in question. This is an allegation of simple negligence. Accordingly, Cotton States was not required to file an expert affidavit pursuant to § 9-11-9.1. We thus affirm the trial court, and find it unnecessary to determine whether Creel is a "professional" within the meaning of § 9-11-9.1.

*Judgment affirmed. All the Justices concur, except Weltner, J., who concurs specially.*

WELTNER, Justice, concurring specially.

We granted certiorari to answer the following inquiry: "What is a professional as contemplated by OCGA § 9-11-9.1?"

I suggest that the term "professional" should be limited for purposes of the requirements of OCGA § 9-11-9.1, as follows:

1. (a) OCGA § 14-7-2 provides:

    (2) "Profession" means the profession of certified public accountancy, architecture, chiropractic, dentistry, profes-

sional engineering, land surveying, law, psychology, medicine and surgery, optometry, osteopathy, podiatry, veterinary medicine, registered professional nursing, or harbor piloting.

(b) OCGA § 14-10-2 provides:

(2) "Professional service" means the personal services rendered by attorneys at law and any type of professional service which may be legally performed only pursuant to a license from a state examining board pursuant to Title 43, for example, the personal services rendered by certified public accountants, chiropractors, dentists, osteopaths, physicians and surgeons, and podiatrists (chiropodists).

(c) OCGA § 43-1-24 provides:

Any person licensed by a state examining board and who practices a "profession," as defined in Chapter 7 of Title 14, the "Georgia Professional Corporation Act," or who renders "professional services," as defined in Chapter 10 of Title 14, "The Professional Association Act," whether such person is practicing or rendering services as a proprietorship, partnership, professional corporation, professional association, other corporation, or any other business entity, shall remain subject to regulation by that state examining board, and such practice or rendering of services in that business entity shall not change the law or existing standards applicable to the relationship between that person rendering a professional service and the person receiving such service, including but not limited to the rules of privileged communication and the contract, tort, and other legal liabilities and professional relationships between such persons.

2. The foregoing limitations suggest that Creel is *not* a "professional" within the meaning of OCGA § 9-11-9.1.

DECIDED NOVEMBER 2, 1990.

*Wildman, Harrold, Allen, Dixon & Branch, Robert N. Dokson, Frank O. Brown, Jr.,* for appellant.

*Bovis, Kyle & Burch, Terry L. Yewell, Smith, Gambrell & Russell, John L. Latham, Carter & Ansley, Thomas E. Magill,* for appellees.