A90A1668, A90A1669. GILLIS v. GOODGAME; and vice versa.
(404 SE2d 815)

BEASLEY, Judge.

Nancy Gillis sued her physician (and his professional association) and James Goodgame, a radiological physicist, alleging defendants administered unnecessary radiation therapy to her after surgery for breast cancer. The affidavit of an expert witness was filed contemporaneously with the complaint, under OCGA § 9-11-9.1, but the affidavit addressed only the alleged professional negligence of the physician. Defendant Goodgame brought a motion to dismiss the claim against him, or in the alternative to grant summary judgment in his favor. His basis was that the services he rendered to plaintiff were professional services and plaintiff's complaint alleged he had committed professional malpractice within the meaning of OCGA § 9-11-9.1 but failed to meet that statute's requirements as to her claim against him. The trial court concluded from the record that defendant Goodgame "engaged in the practice of medicine as described in OCGA § 43-34-20 (3)," that plaintiff's complaint alleged Goodgame was liable for medical malpractice failed to meet the requirements of OCGA § 9-11-9.1 as to Goodgame. Although the order shows on its face that evidence outside the pleadings was considered, making the motion one for summary judgment, the court ordered plaintiff's complaint against Goodgame "dismissed without prejudice." Later, the trial court ordered entry of final judgment in favor of Goodgame pursuant to OCGA § 9-11-54 (b). Plaintiff appeals (Case No. A90A1668)

and defendant Goodgame cross-appeals (Case No. A90A1669).

## Case No. A90A1669

We first address Goodgame's cross-appeal because he argues that plaintiff's appeal should be dismissed.

1. Plaintiff Gillis attempted to bring to this court a direct appeal of the December 1, 1989, order dismissing her complaint against defendant Goodgame. A notice of appeal was filed January 16, 1990 and this court docketed the case as Case No. A90A0874. By order dated April 2, 1990, however, the appeal was dismissed for lack of jurisdiction because the order was not one from which a direct appeal could be taken pursuant to OCGA § 5-6-34. On April 11, 1990 the trial court issued its order of final judgment. It forms the basis for the current appeals. Goodgame contends the order of final judgment is a nullity because it was issued before this court transmitted the remittitur to the trial court by order dated April 13.

The reason a lower court order is void if it is entered before remittitur from the appellate court is that the lower court lacks jurisdiction to enter further orders until jurisdiction is returned to the lower court. See Marsh v. Way, 255 Ga. 284 (1) (336 SE2d 795) (1985); Talley v. City Tank Corp., 158 Ga. App. 130 (1) (279 SE2d 264) (1981). Even though this court docketed the earlier appeal of this case, the appeal was dismissed because this court lacked jurisdiction. Jurisdiction is not conferred by the improper filing of a notice of appeal but is conferred only by constitution and statute.

Thus, even though the appeal was docketed, jurisdiction never attached in this court. Even though the order granting final judgment to Goodgame was entered prior to the lower court's receipt of the remittitur, the trial court did not lack jurisdiction to enter the judgment. In actuality, the trial court never lost jurisdiction of the case.

2. We reject Goodgame's argument that the dismissal without prejudice is not a judgment which can be made final pursuant to OCGA § 9-11-54 so that plaintiff's direct appeal is improper and should be dismissed. Dismissal without prejudice does not operate as an adjudication on the merits. OCGA § 9-11-41. Even though a dismissal without prejudice may allow the plaintiff to recommence his claim at a later date, it is nonetheless a dismissal of the subject action. Thus, it can be made a final judgment in a case in which other claims remain pending where, as here, the trial court expressly determines there is no just reason for delay. OCGA § 9-11-54 (b). Moreover, since the order is actually a grant of summary judgment to defendant Goodgame, it is an adjudication on the merits. No grounds exist for dismissing plaintiff's appeal.

## Case No. A90A1668

3. The trial court found, based on the deposition testimony of plaintiff's radiologist, that defendant Goodgame engaged in the practice of medicine as defined by OCGA § 43-34-20 (3) so that an expert affidavit was required by OCGA § 9-11-9.1 because professional negligence was alleged.

Whether the trial court erred in finding that the certified radiological physicist was engaged in the practice of medicine when his allegedly negligent acts occurred is immaterial to the determination of whether an expert affidavit was required. It is true that since the legislature's adoption of the rule of practice there has been no judicially perceived question that OCGA § 9-11-9.1 applies to medical malpractice. That may be because it was enacted as section 3 of the Medical Malpractice Act of 1987. See *Housing Auth. of Savannah v. Greene*, 259 Ga. 435, 437 (3) (383 SE2d 867) (1989). What has been the subject of debate is whether it applies to all professions or only to some and, if the latter, then to which professions and by what rationale.

The procedural prerequisite to malpractice suits became effective July 1, 1987. Ga. L. 1987, p. 887, sec. 3. It has been applied to the legal profession, *Barr v. Johnson*, 189 Ga. App. 136 (375 SE2d 51) (1988); *Padgett v. Crawford*, 189 Ga. App. 568 (376 SE2d 724) (1988), and *Frazier v. Merritt*, 190 Ga. App. 832 (380 SE2d 495) (1989); the engineering profession, *Precision Planning v. Wall*, 193 Ga. App. 331 (387 SE2d 610) (1989), and *Kneip v. Southern Engineering Co.*, 260 Ga. 409 (395 SE2d 809) (1990); and the architectural profession, *Housing Auth. of Savannah v. Gilpin & Bazemore/Architects &c.*, 191 Ga. App. 400 (381 SE2d 550), affirmed sub nom, *Housing Auth. of Savannah v. Greene*, supra. There is no case alleging malpractice[1] which holds that the affidavit requirement does not apply to a given profession.[2]

The plain language rule of statutory construction has been repeatedly applied to this procedural rule. The statute states clearly: "(a) In any action for damages alleging professional malpractice, the plaintiff shall be required to file with the complaint an affidavit of an

---

[1] To say it is "professional" malpractice is redundant. Webster's Third International Dictionary defines "malpractice" as "a dereliction from professional duty whether intentional, criminal, or merely negligent by one rendering professional services that results in injury, loss, or damage to the recipient of those services or to those entitled to rely upon them or that affects the public interest adversely; the failure of one rendering professional services to exercise that degree of skill and learning commonly applied under all the circumstances in the community by the average prudent reputable member of the profession with the result of injury, loss, or damage to the recipient of those services or to those entitled to rely upon them."

[2] *Kneip*, supra at 410 (3), recognizes that suits against a professional which allege only simple negligence and not dereliction of professional duty do not require affidavits.

expert competent to testify, which affidavit shall set forth specifically at least one negligent act or omission claimed to exist and the factual basis for each such claim." OCGA § 9-11-9.1.

A year after the Act's effective date, the Court of Appeals expressly held in *Barr v. Johnson*, supra at 137: "This statute applies to any action for professional malpractice by negligent act or omission, sounding in tort or by breach of contract for failure to perform professional services in accordance with the professional obligation of care."

In *Housing Auth. of Savannah v. Gilpin & Bazemore/Architects &c.*, supra, 401, the Court of Appeals recited the plain language of the statute and took it to apply to architectural services because "Architecture is a professional service which must be exercised with that degree of care and skill as is ordinarily employed by the profession under similar conditions and circumstances." It cites as authority *Hudgins v. Bacon*, 171 Ga. App. 856, 859 (321 SE2d 359) (1984), a professional liability case against a contractor for negligence in building a house. In *Hudgins*, the court recognized that the law imposed upon " 'persons performing architectural, engineering, and other professional and skilled services' " a standard of care as is " 'ordinarily employed by their respective professions.' " Ibid. In reviewing the Housing Authority case, the Supreme Court agreed with the Court of Appeals, finding that the practice of architecture is recognized as a profession under Georgia statutory law (OCGA § 43-4-1 et seq; OCGA § 14-7-2 (2)), and that caselaw holds that "persons performing architectural and engineering services" are bound by professional standards of care.

In *Greene*, supra at 437, the Supreme Court explicitly explained its application of the plain language rule to this statute, and held that the statute "applies to 'any action for damages alleging professional malpractice' on the part of an architect or other professional." The Supreme Court also reiterated this "plain language" position in *Kneip*, supra, requiring the affidavit when the allegations are malpractice and not simple negligence.

The legislature has not rewritten the statute since its application to malpractice other than medical, although invited to do so if it viewed the repeated judicial construction as misinterpretation of intent. See *Precision Planning v. Wall*, supra, special concurrence, and *Kneip*, supra at 411 (4).

The expert's affidavit prerequisite serves a salutary purpose, which "is to reduce the number of frivolous malpractice suits being filed, . . ." *0-1 Doctors Memorial Holding Co. v. Moore*, 190 Ga. App. 286, 288 (1) (378 SE2d 708) (1989). The plaintiff is simply required to show at the outset that it is not a frivolous suit. This serves to prevent putting a professional to great expense and adversely affecting

his or her professional reputation unjustifiably. It also serves to prevent the clogging of the courts with such suits, which merely increase the costs of operating the courts and delay the resolution of meritorious suits. It simply contemplates that parties allegedly damaged by malpractice show up front, by expert's affidavit, that they have some evidence of malpractice, which by its nature can "be established only by professional or expert testimony." *Kneip*, supra at 410; *Housing Auth. of Savannah*, supra, 259 Ga. at 436 (1).

The statute makes no exceptions. It does not tie the definition of "profession" from the chapter on Professional Corporations to it, as the dissent has done. That chapter governs those occupations which are permitted to form professional corporations, a separate entity for business and tax purposes; it has nothing to do with the substance of malpractice, except a peripheral relationship, i.e., the professional corporation protects the professional's personal assets. OCGA § 9-11-9.1, on the other hand, is remote in concept and placement in the Code; it is in the title on the Civil Practice Act, which governs the procedure for bringing and maintaining lawsuits.

The same is true of OCGA § 14-10-2 (2), which merely gives a definition of "professional service" for that chapter. The chapter is The Georgia Professional Association Act. It governs those associations and limits the professions which may form them, to professions which are licensed.

Both of these provisions are in the title on Corporations, Partnerships, and Associations, which has nothing to do with the rules of practice and procedure in civil cases. And neither of them covers all professions from which claims of malpractice might arise. Yet the procedural rule applies "In any action for damages alleging professional malpractice. . . ." Plaintiff's complaint against Goodgame, by its nature and its language, alleges such.

Summary judgment to the radiological physicist was authorized.

4. The remaining enumeration is not meritorious.

*Judgment affirmed. Birdsong, P. J., Carley, Cooper and Andrews, JJ., concur. Sognier, C. J., McMurray, P. J., Banke, P. J., and Pope, J., concur in part and dissent in part.*

POPE, Judge, concurring in part and dissenting in part.

I concur in the opinion in Case No. A90A1669 but respectfully dissent to the opinion in Case No. A90A1668.

Defendant Goodgame argues that as a radiological physicist he is a professional and that for plaintiff to bring an action against him for negligent practice of that profession she is required by OCGA § 9-11-9.1 to file with her complaint an affidavit supporting her claim against him. The issue presented by this case is whether the requirements of OCGA § 9-11-9.1 should be extended to a complaint for negligence

against a radiological physicist. I conclude the statute was not intended to apply in such a case as this.

"[OCGA § 9-11-9.1] applies to any action for professional malpractice by negligent act or omission, sounding in tort or by breach of contract for failure to perform professional services in accordance with the professional obligation of care." *Barr v. Johnson*, 189 Ga. App. 136, 137 (375 SE2d 51) (1988). The only Georgia statute in which "profession" is defined is OCGA § 14-7-2 (2), which lists only 16 occupations including "medicine and surgery" but not the occupation of defendant Goodgame. The term "professional service" is defined at OCGA § 14-10-2 (2) as "any type of professional service which may be legally performed only pursuant to a license from a state examining board pursuant to Title 43. . . ." The majority opinion rejects any analysis of the term "professional malpractice" which refers to these two sections of the Georgia Code. The majority opinion acknowledges, however, that the Georgia Supreme Court in *Housing Auth. of Savannah v. Greene*, 259 Ga. 435 (383 SE2d 867) (1989), referred to these other, unrelated, statutes in reaching the conclusion that architecture is a profession which is therefore included within the expert affidavit requirement. Justice Weltner has also recently suggested "that the term 'professional' should be limited for purposes of the requirements of OCGA § 9-11-9.1" by the definitions found at OCGA §§ 14-7-2; 14-10-2 and 43-1-24. See *Creel v. Cotton States Mut. Ins. Co.*, 260 Ga. 499, 500 (397 SE2d 294) (1990) (Weltner, J., concurring specially).

Defendant Goodgame testified at his deposition that he was not required to be licensed or certified to practice his occupation by any state authority. The practice of radiological physics is certainly a learned skill but it is neither a "profession" as that term is defined by statute nor a service requiring a state license or certificate to practice. "The foregoing limitations suggest that [Goodgame] is *not* a 'professional' within the meaning of OCGA § 9-11-9.1." Id.

Even though the expert affidavit statute has been interpreted by the appellate courts as applying to complaints against architects and engineers (see *Housing Auth. of Savannah v. Greene*, supra) and attorneys at law (see *Padgett v. Crawford*, 189 Ga. App. 568 (376 SE2d 724) (1988) and *Barr v. Johnson*, supra), the Georgia Supreme Court has recently acknowledged the courts may have interpreted the statute more broadly than the legislature intended when it enacted the statute as part of the Medical Malpractice Act of 1987. See *Kneip v. Southern Engineering Co.*, 260 Ga. 409 (4) (395 SE2d 809) (1990). Therefore, I do not believe the requirements of the expert affidavit statute should be extended to this action alleging negligence in the performance of the services of a radiological physicist.

According to the majority opinion, in any case in which a plaintiff

would be required to call an expert witness to prove the allegation of negligent performance of a skilled service, the plaintiff would be required to file the affidavit of an expert witness with the complaint. In my opinion, OCGA § 9-11-9.1 should not be extended this far. A complaint is not brought within the purview of OCGA § 9-11-9.1 simply because it alleges negligent performance of a skilled service and will require the testimony of an expert witness to establish the defendant did not meet the reasonable degree of care and skill ordinarily employed in the service.

I am authorized to state that Chief Judge Sognier, Judge McMurray and Judge Banke join in this opinion.

DECIDED MARCH 15, 1991 —
REHEARING DENIED MARCH 29, 1991 — ▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

*Berrien L. Sutton, Ronald W. Hallman,* for appellant.
*Beckmann & Pinson, William H. Pinson, Jr.,* for appellee.