S92A1068, S92X1069. LUTZ et al. v. FORAN; and vice versa.

(427 SE2d 248)

FLETCHER, Justice.

This appeal challenges the constitutionality of the affidavit requirement in professional malpractice actions. We hold that OCGA § 9-11-9.1 does not violate the constitutional prohibition against the inclusion of more than one subject matter in a bill or a matter in the body different from the title. Because the law was unsettled on the act's coverage of professionals when the complaint was filed, we reverse and remand to enable the plaintiffs to file an appropriate affidavit.

Reid Lutz owned a shrimp boat that sunk in the Savannah River. The boat was salvageable, and Lutz marked it with buoys.[1] He had raised it within five feet of the surface when a ship piloted by Michael Foran, a licensed harbor pilot, hit and damaged it beyond repair. Lutz and the owner of the salvage equipment sued Foran for negligence in failing to control his vessel and causing the collision of boats. Foran denied that a collision occurred and moved to dismiss for Lutz's failure to attach an expert affidavit in compliance with OCGA § 9-11-9.1. Lutz appeals from the trial court's order dismissing the complaint. In the cross-appeal, Foran argues that the dismissal was an adjudication on the merits and should have been with prejudice.

1. The expert affidavit requirement provides:

> In any action for damages alleging professional malpractice, the plaintiff shall be required to file with the complaint an affidavit of an expert competent to testify, which affidavit shall set forth specifically at least one negligent act or omission claimed to exist and the factual basis for each such claim.

OCGA § 9-11-9.1 (a) (1982 & Supp. 1992). This court relied on the plain language of the statute to hold in *Housing Auth. v. Greene*, 259 Ga. 435, 437 (383 SE2d 867) (1989), that it "applies to 'any action for damages alleging professional malpractice' on the part of an architect or other professional." Subsequently, we held that affidavits are required only in lawsuits filed against a professional in one of the occupations enumerated in OCGA § 14-7-2 (2) or subject to licensing and regulation under OCGA §§ 14-10-2 (2) and 43-1-24. *Gillis v. Goodgame*, 262 Ga. 117 (414 SE2d 197) (1992). A harbor pilot is a member

---

[1] Since Lutz appeals from the grant of a motion to dismiss under OCGA § 9-11-12 (b) (6), we must construe the pleadings in the light most favorable to him with all doubts resolved in his favor. See *Alford v. Public Service Comm.*, 262 Ga. 386, n. 2 (418 SE2d 13) (1992).

of a profession listed in § 14-7-2. Therefore, Lutz must file an affidavit with his complaint if the allegations involve professional malpractice.

2. "A professional malpractice action is merely a professional negligence action and calls into question the conduct of a professional in his area of expertise." (Emphasis deleted.) *Candler Gen. Hosp. v. McNorrill*, 182 Ga. App. 107, 110 (354 SE2d 872) (1987). In malpractice actions, a plaintiff must present expert testimony "to establish the parameters of acceptable professional conduct." *Self v. Executive Committee*, 245 Ga. 548, 549 (266 SE2d 168) (1980). Not every act that a professional performs, however, is a professional act that requires expert testimony. *Kneip v. Southern Engineering Co.*, 260 Ga. 409, 410 (395 SE2d 809) (1990). If the professional's alleged negligence does not require the exercise of professional judgment and skill, the cause of action is based on a simple negligence theory. *Candler*, 182 Ga. App. at 111. For example, expert testimony on the appropriate standard of care is not needed when a patient falls as a result of a hospital's failure to repair a leaking bathroom fixture. *Self*, 245 Ga. at 548-549; see also *Creel v. Cotton States Mut. Ins. Co.*, 260 Ga. 499, 500 (397 SE2d 294) (1990) (no affidavit required when a financial planner transmits the wrong payment plan for an annuity).

The allegations in the complaint establish that Lutz filed a claim for professional, rather than simple, negligence. Lutz's complaint alleges that Foran acted negligently by failing to have a person acting as a lookout on the ship, failing to steer the ship away from the submerged boat's markers, and failing to prevent the ship from hitting the shrimp boat. Unlike the simple negligence case where the professional performs an administrative, clerical, or routine act demanding no special expertise, Foran was executing a task that required his expert judgment and skill. He was navigating an ocean-going ship through the narrow channel of the Savannah River. Only a licensed harbor pilot is qualified to direct the movement of a ship as it travels into and out from the state's ports and rivers. See OCGA § 52-6-30. Because conducting an ocean-going ship in the Savannah River calls for the professional skill of a harbor pilot, Lutz must file an expert affidavit with his complaint.

3. Lutz alleges that the affidavit requirement in OCGA § 9-11-9.1 should be struck down as unconstitutional because it is part of an act that contains more than one subject matter and a subject different from the matter expressed in the title. Specifically, he argues that the Medical Malpractice Reform Act of 1987 cannot apply to professions other than medicine without violating Art. III, Sec. V, Par. III of the Georgia Constitution.

This constitutional provision provides that "[n]o bill shall pass which refers to more than one subject matter or contains matter dif-

ferent from what is expressed in the title thereof." Ga. Const., Art. III, Sec. V, Par. III. The legislature enacted this paragraph to prevent surreptitious legislation such as the "Yazoo Fraud" and omnibus bills that combine several adverse matters to secure their passage. *Camp v. MARTA*, 229 Ga. 35, 38 (189 SE2d 56) (1972). Requiring the act's title to "alert the reader to the matters contained in its body is to protect against surprise legislation." *Mead Corp. v. Collins*, 258 Ga. 239 (367 SE2d 790) (1988); see also *Cady v. Jardine*, 185 Ga. 9, 10 (193 SE 869) (1937) (recalling the event that caused the provision's enactment in the 1798 Constitution); *Central of Ga. R. Co. v. State*, 104 Ga. 831, 846 (31 SE 531) (1898) (describing rationale for prohibition against multiple subject matters in same act).

(a) The provision requiring the title to express what is in the act must be given a reasonable interpretation.[2] *Cady*, 185 Ga. at 10.

> It was never intended that the substance of the entire act should be set forth in the caption. It was not contemplated that every detail stated in the body should be mentioned in the caption. If what follows after the enacting clause is definitely related to what is expressed in the title, has a natural connection, and relates to the main object of legislation, . . . there is no infringement of the constitutional [provision]. . . . Any provision in the body which is germane to [the act's] general purpose as embraced in the title [does not violate] the [Constitution].

Id. at 10-11; accord *Mead Corp.*, 258 Ga. at 240. The caption must indicate only the general object to be dealt with in the act to protect the people against covert legislation. *State of Ga. v. Resolute Ins. Co.*, 221 Ga. 815, 817 (147 SE2d 433) (1966).

Applying a reasonable interpretation of the statute, we hold that the title of the act gives the reader sufficient notice that the affidavit requirement will apply in professional malpractice actions. The caption states that the act is "to provide that in any case in which *professional* malpractice is alleged, an affidavit of an expert competent to testify setting forth the particulars of the claim shall be filed with the complaint." (Emphasis supplied.) Ga. L. 1987, p. 887. The language in section three of the act tracks the words in the caption. Id. at 889. Section three is one of only three substantive provisions of the four-page act and receives its proportionate share of the lines in the cap-

---

[2] This court has construed the word "title" in the Constitution to mean the act's caption. See, e.g., *Mead Corp.*, 258 Ga. at 239; *Cady*, 185 Ga. at 11. This opinion uses the terms "title" and "caption" interchangeably.

tion.[3] Thus, despite the short title of "Medical Malpractice Reform Act of 1987," the caption gives the General Assembly and the public adequate notice that the act contains matter relating to malpractice actions against professionals.

The act's legislative history supports this conclusion. The Governor's Advisory Committee on Tort Reform in its final report in 1986 recommended the affidavit requirement in "medical malpractice and other professional liability cases." A conference committee composed of three leaders of both the house and senate added the affidavit provision to Senate Bill 2. 1 S. Jour. at 957; 1 H. Jour. at 1189. The bill was passed as part of an intensely debated effort to reform the state's tort laws. Presumably, members of the General Assembly looked beyond the short title and read the caption of the bill to determine its contents before voting.

Although no one has previously challenged the constitutionality of OCGA § 9-11-9.1, we have previously considered the arguments on which the dissenting opinion relies. See *Housing Auth.*, 259 Ga. at 437-438. We rejected the argument that the affidavit requirement applies solely to medical malpractice actions, despite the reference in the 1989 amendment to medical malpractice, because of the presumption that the General Assembly enacts statutes with full knowledge of the existing condition of the law and that statutes are to be interpreted with reference to prior decisions of the courts. *Housing Auth.*, 259 Ga. at 438 (quoting *Gulf Life Ins. Co. v. Folsom*, 256 Ga. 400, 403 (349 SE2d 368) (1986)). Prior to the passage of the 1989 amendment, the Court of Appeals interpreted the statute to apply to any professional malpractice action. See *Barr v. Johnson*, 189 Ga. App. 136, 137 (375 SE2d 51) (1988), cert. denied, 259 Ga. (1989).

Moreover, if legislators and citizens lacked notice that the affidavit requirement applied to professions outside the medical field, as

---

[3] The entire caption states as follows:

To provide substantive and comprehensive reforms affecting claims for medical malpractice; to provide a short title; to amend Title 9 of the Official Code of Georgia Annotated, relating to civil practice, so as to provide that minors who have attained the age of five years and incompetents shall be subject to limitations of actions provisions regarding medical malpractice; to provide for periods of limitation and repose; to provide exceptions; to provide findings; to provide that certain actions shall not be revived or extinguished; to provide that in any case in which professional malpractice is alleged, an affidavit of an expert competent to testify setting forth the particulars of the claim shall be filed with the complaint; to provide the contents of such affidavit; to provide exceptions; to provide procedures; to provide that no period of limitation is extended by such filing requirements; to amend Chapter 1 of Title 51 of the Official Code of Georgia Annotated, relating to general provisions affecting torts, so as to provide immunity from civil liability to certain health care providers or other entities providing professional services without compensation or the expectation thereof; to provide exceptions; to provide for applicability; to repeal conflicting laws; and for other purposes.

the dissent contends, the surprise resulted from this court's interpretation of the statute, not the act itself. In concluding that the statute is unconstitutional, the dissenting opinion ignores the rule of statutory construction that we must construe a statute as valid when possible. See *City of Hapeville v. Anderson*, 246 Ga. 786, 787 (272 SE2d 713) (1980). The statute would be constitutional, even under the analysis of the dissent, if the affidavit requirement were limited to the medical profession. Yet, the legislature has declined invitations in 1989, 1990, and 1991 to amend the statute to limit the affidavit requirement to the medical profession.[4]

To conclude that the caption gives inadequate notice because the professional affidavit requirement is located between provisions on medical malpractice and health care providers is to place in jeopardy a major portion of the bills that the legislature passes. Our court has never held either the legislature or the bills it passes to such a strict standard of notice. The test is reasonableness, and the title of the challenged act gives reasonable notice to any reader of the act's contents.

(b) Whether an act violates the multiple subject matter rule depends on whether all of the bill's provisions seek to accomplish a single objective. *Wall v. Bd. of Elections*, 242 Ga. 566, 570 (250 SE2d 408) (1978). The Constitution looks to "unity of purpose." *Central R. Co.*, 104 Ga. at 846.

> As used in the Constitution, [the term "subject matter"] is to be given a broad and extended meaning so as to allow the legislature authority to include in one Act all matters having a logical or natural connection. To constitute plurality of subject matter, an Act must embrace two or more dissimilar and discordant subjects that by no fair intendment can be considered as having any logical connection with or relation to each other. All that our Constitution requires is that the Act embrace only one general subject.

*Crews v. Cook*, 220 Ga. 479, 481 (139 SE2d 490) (1964). This court has upheld several acts against constitutional challenges that they embraced multiple subject matters. See *Wall*, 242 Ga. at 570 (upholding act extending city limits by annexation and changing the method of electing a city's governing body); *Crews*, 220 Ga. at 481 (upholding act

---

[4] See *Southern Engineering*, 260 Ga. at 411 ("should the legislature determine that our decisions interpret the statute more broadly than it intended, it may rewrite the statute"); *Precision Planning v. Wall*, 193 Ga. App. 331, 332 (387 SE2d 610) (1989) (Benham, J., concurring specially); see also *Gillis v. Goodgame*, 199 Ga. App. 413, 416 (404 SE2d 815) (1991), rev'd on other grounds, *Gillis*, 262 Ga. at 117.

dealing with wills and the administration of estates); *Capitol Distrib. Co. v. Redwine*, 206 Ga. 477, 486 (57 SE2d 578) (1950) (upholding act increasing excise taxes on both malt beverages and wine).

The general purpose of the challenged act is to reform tort liability of both medical providers and other professionals. The act seeks to reduce the number of liability claims against professionals. By establishing a new statute of limitation for suits against medical providers by minors or incompetents, requiring injured persons to support their allegations of professional malpractice with an affidavit by an expert, and granting immunity from civil liability to health care providers who render services without pay. Ga. L. 1987 at 888-891 (codified at OCGA §§ 9-3-73; 9-11-9.1; and 51-1-29.1). All three provisions are logically related to the general subject of professional liability and do not embrace discordant subjects. Therefore, the act is constitutional under the multiple subject matter provision.

4. A complaint is subject to dismissal for failure to state a claim when the plaintiff fails to file an expert affidavit as required. OCGA § 9-11-9.1 (e). A dismissal for failure to state a claim is a dismissal on the merits. *Dillingham v. Doctor's Clinic*, 236 Ga. 302 (223 SE2d 625) (1976). Although ordinarily this court would rule that the trial court should have dismissed the complaint with prejudice, that result would be unfair in this case. In *Kneip v. Southern Engineering*, we concluded that dismissal of the engineering malpractice action would be manifestly unfair because it was unclear when the complaint was filed whether OCGA § 9-11-9.1 applied to claims of engineering malpractice. Similarly, when Lutz filed his complaint, he did not have the benefit of our decision in *Gillis v. Goodgame* delineating the professionals against whom an expert affidavit must be filed in a malpractice action. Accordingly, we reverse the dismissal and remand for the trial court to give Lutz a reasonable time to file the appropriate affidavit under OCGA § 9-11-9.1.

*Judgment affirmed in Case No. S92A1068; reversed in Case No. S92X1069 and remanded with direction. Clarke, C. J., Hunt, P. J., Benham, Hunstein, JJ., and Judge Eugene H. Gadsden concur; Sears-Collins, J., dissents.*

HUNT, Presiding Justice, concurring.

One cannot argue with the logic of the dissent. In the abstract, it is entirely correct: the title of the Medical Malpractice Reform Act of 1987 gives no clue that it applies to malpractice other than medical malpractice.[5]

---

[5] While the allegation of invalidity in this case is based on the Georgia Constitution, the "single subject" constitutional provision at issue pertains to a procedural irregularity which, while not in the least trivial or unimportant, is not of the magnitude of an ongoing equal

But the reality is that, time and again, over the last five years, we, and the Court of Appeals, have applied the Act to all aspects of professional negligence. See *Gillis v. Goodgame*, 262 Ga. 117 (414 SE2d 197) (1992) (all professions recognized under Georgia law in OCGA §§ 14-7-2 (2); 14-10-2 (2); 43-1-24); *Cheeley v. Henderson*, 261 Ga. 498 (405 SE2d 865) (1991) (lawyers); *Kneip v. Southern Engineering Co.*, 260 Ga. 409 (395 SE2d 809) (1990) (engineers); *Housing Auth. v. Greene*, 259 Ga. 435 (383 SE2d 867) (1989) (architects); *Precision Planning v. Wall*, 193 Ga. App. 331 (387 SE2d 610) (1989) (engineers); *Frazier v. Merritt*, 190 Ga. App. 832 (380 SE2d 495) (1989) (lawyers); *Padgett v. Crawford*, 189 Ga. App. 568 (376 SE2d 724) (1988) (lawyers); *Barr v. Johnson*, 189 Ga. App. 136 (375 SE2d 51) (1988) (lawyers). Surely if the members of the General Assembly were surprised by these holdings or disagreed with them, they would have cured the problem by clarifying the scope of the Act. To now declare the Act unconstitutional, while an interesting academic exercise, serves no practical purpose.

SEARS-COLLINS, Justice, dissenting.

The issue we are now asked to decide is whether Section 3 of the Medical Malpractice Reform Act of 1987[6] (hereafter "the Act"), now codified at OCGA § 9-11-9.1, offends Art. III, Sec. V, Par. III of the Georgia Constitution, which provides that "[n]o bill shall pass which refers to more than one subject matter or contains matter different from what is expressed in the title thereof." As this court noted in *Central of Ga. R. Co. v. State*, 104 Ga. 831, 845-847 (31 SE 531) (1898), this Georgia contribution to American constitutional law[7] contains two separate restrictions: a "single subject" requirement and a title requirement. The single subject provision is designed to "inhibit the passage of what is often termed 'omnibus' or 'log-rolling' bills," *Central of Ga. R. Co.*, 104 Ga. at 846-847, in which many diverse matters are contained in one bill "with the view of combining in their

---

protection or substantive due process violation.

[6] Ga. L. 1987, pp. 887-891.

[7] Georgia was the first state to adopt a constitutional title and single-subject requirement. *Cady v. Jardine*, 185 Ga. 9, 10 (193 SE 869) (1937). As of 1982, forty-one state constitutions provided that an act shall not embrace more than one subject or object. Sutherland, Statutory Construction, § 17.01 (Sands 4th ed. 1985 & Supp. 1992). Our provision had its genesis in the notorious Yazoo Land Fraud, in which an obscure legislative provision not indicated in the title of its statute authorized the sale of over 35,000,000 acres of land which now comprise the states of Alabama and Mississippi to certain land speculation companies for a mere $500,000 dollars, or less than two cents per acre. By an act of February 13, 1796, the Georgia Legislature tried to declare this egregious fraud null and void. The United States Supreme Court held that an innocent purchaser of the land held good title which could not be abrogated by the 1796 act. *Fletcher v. Peck*, 10 U. S. (6 Cr.) 87 (1810) (the first case in which the Supreme Court struck down a state law as unconstitutional). See generally *Cady v. Jardine*, supra.

favor the advocates of all and thus securing the passage of several measures no one of which could succeed upon its own merits." *Camp v. MARTA*, 229 Ga. 35, 38 (189 SE2d 56) (1972). The title requirement facilitates the legislative process in two important ways. First, it prevents the surprise that may result when the title of an act does not fully inform legislators of the act's contents. *Fortson v. Weeks*, 232 Ga. 472, 474 (208 SE2d 68) (1974) (citing *Prothro & Kendall v. Orr*, 12 Ga. 36, 43 (1852)); *Cade v. State*, 207 Ga. 135 (60 SE2d 763) (1950). Second, the title requirement alerts the citizens of this state, especially affected groups and parties, to the subjects the legislature is considering. *Green v. Bryson*, 223 Ga. 862, 864 (159 SE2d 56) (1968); *Nelson v. Southern Guaranty Ins. Co.*, 221 Ga. 804, 807 (147 SE2d 424) (1966); *Central of Ga. R. Co.*, supra, 104 Ga. at 845.

In this case, the question of impermissible "log-rolling" need not be addressed because I conclude, as the appellants contend, that the title of the Act gave citizens and legislators notice that the body of the Act would contain matter related to medical malpractice actions only and did not fairly apprise citizens and their legislators that Section 3 of the Act, now codified at OCGA § 9-11-9.1, would apply to professional malpractice actions in general.

In this regard, § 9-11-9.1 provides, in relevant part, that "[i]n any action for damages alleging professional malpractice, the plaintiff shall be required to file with the complaint an affidavit of an expert competent to testify." Id. at (a). In *Housing Auth. of Savannah v. Greene*, 259 Ga. 435 (383 SE2d 867) (1989), this court correctly held that "under its *plain language*, OCGA § 9-11-9.1 applies to 'any action for damages alleging professional malpractice' . . . [and] is not restricted to medical-malpractice actions." (Emphasis supplied.) Id. at 438. In *Gillis v. Goodgame*, 262 Ga. 117 (414 SE2d 197) (1992), we subsequently held that the reach of § 9-11-9.1 was limited to the definition of "professional" contained in the OCGA, currently §§ 14-7-2 (2); 14-10-2 (2); and 43-1-24. Given the plain meaning of the statutory language, our rules of statutory construction prohibited us from relying on the short title and caption of the Act to hold that the statute was limited to medical malpractice actions only. *Telecom*USA v. Collins*, 260 Ga. 362, 363-364 (393 SE2d 235) (1990) (plain language controls unless it produces absurdity); *Thomas v. Bd. of Commrs. of Chattooga County*, 196 Ga. 10 (25 SE2d 647) (1943) (courts may look to caption of an act in construing only an *ambiguous* statute).

Curiously, no litigants in previous cases involving § 9-11-9.1 have asked us to consider the issue presented by this case — whether the short title and the caption failed to put legislators and citizens on notice of what was contained in OCGA § 9-11-9.1, in violation of Art. III, Sec. V, Par. III of our Constitution. This issue puts the focus on the language of the short title and the caption of the Act. The caption

of the Medical Malpractice Reform Act of 1987 provides as follows:

> To provide substantive and comprehensive reforms affecting claims for *medical* malpractice; to provide a short title; to amend Title 9 of the Official Code of Georgia Annotated, relating to civil practice, so as to provide that minors who have attained the age of five years and incompetents shall be subject to limitations of actions provisions regarding *medical* malpractice; to provide for periods of limitation and repose; to provide exceptions; to provide findings; to provide that certain actions shall not be revived or extinguished; to provide that in any case in which *professional* malpractice is alleged, an affidavit of an expert competent to testify setting forth the particulars of the claim shall be filed with the complaint; to provide the contents of such affidavit; to provide exceptions; to provide procedures; to provide that no period of limitation is extended by such filing requirements; to amend Chapter 1 of Title 51 of the Official Code of Georgia Annotated, relating to general provisions affecting torts, so as to provide immunity from civil liability to certain *health care* providers or other entities providing *professional* services without compensation or the expectation thereof; to provide exceptions; to provide for applicability; to repeal conflicting laws; and for other purposes.

(Emphasis supplied.) Ga. L. 1987, pp. 887-888.

In deciding whether this caption and the short title put citizens and their legislators on notice of the broad impact of § 9-11-9.1, we must bear in mind the purpose of the constitutional provision. "The purpose of this constitutional provision is to protect the people against covert or surprise legislation," *Nelson*, supra, 221 Ga. at 807, particularly since "[i]t is a common practice to pass bills by their title only. . . ." *Prothro & Kendall v. Orr*, supra, 12 Ga. at 43. In short, the title of a bill must be honest. It must provide adequate notice to citizens and their legislators of the subjects contained therein. To this end, we have held that the title must not be "deceiving upon a *casual reading* of only the [caption] of the [a]ct." (Emphasis supplied.) *Lee v. State*, 239 Ga. 769, 770 (238 SE2d 852) (1977).

In this case, the majority opinion undermines the purpose of the constitutional provision by focusing on the phrase "professional malpractice" in the caption in isolation instead of determining what is communicated to legislators or concerned citizens by the Act's short title and entire caption. Examining the caption, we see, first, that the opening clause states that the Act is "to provide substantive and comprehensive reforms affecting claims for medical malpractice." A legis-

lator or citizen reading this clause, especially given that the short title preceding that opening clause is the "Medical Malpractice Reform Act of 1987," would, with some justification, believe that the remaining clauses of the caption would set forth the substantive and comprehensive medical malpractice reforms mentioned in the opening clause. Moreover, the phrase "professional malpractice" is mentioned only once in the twenty-one lines of the caption, is buried in the middle of the caption, and is bracketed by a provision affecting *medical* malpractice statutes of limitation and repose and another provision reforming the liability of *health care* providers in emergency or charitable settings. The contents of the caption, especially when read alongside the Act's short title, gave inadequate notice that the affidavit requirement would apply to suits against riverboat captains and harbor pilots. Rather, the title probably left most reasonable legislators and concerned citizens with the distinct impression that the affidavit requirement was designed to reform medical malpractice only.

In addition to focusing on the phrase "professional malpractice" in isolation, the majority invokes the legislative history of the affidavit requirement to support its conclusion that the title of the Act gave legislators and citizens adequate notice. This reliance on legislative history, however, is misplaced. First, the constitutional provision in question requires the title of the act to provide adequate notice; it does not say that the legislative history will suffice. Considering the profusion of bills that legislators must review, it is contrary to the spirit of the constitutional provision to rely on legislative history to determine if legislators received adequate notice of what was contained in the body of an act.

Moreover, the legislative history of the affidavit requirement leads to the inescapable conclusion that the legislators were not adequately notified that the affidavit requirement extended beyond the medical profession to other professionals. The Senate included a blanket affidavit requirement in the Senate substitute for the House bill that eventually became the broadly applicable Tort Reform Act of 1987, but the House *rejected* the substitute bill. 1 H. Jour. 1134. The caption of the rejected bill, like the caption of the Tort Reform Act of 1987, began with the comprehensive statement: "To provide substantial and comprehensive civil justice reform affecting tort claims litigation." See 1 H. Jour. 1131 and 1193. The caption of the rejected bill then proposed that "in any case in which professional malpractice or product liability is alleged, an affidavit of an expert competent in the field setting forth the particulars of the claim shall be filed with the complaint." 1 H. Jour. 1131. Since the opening clause of the caption dealt with tort reform in general, any citizen or legislator who read the clause of the caption dealing with "professional malpractice or product liability" would have obtained real no-

tice of the comprehensive nature of the affidavit requirement. Perhaps because of such clear notice, the members of the legislature *rejected* the bill, and the affidavit requirement contained therein was not included in the equally comprehensive Tort Reform Act of 1987.

Instead, it can be surmised that the defeated supporters of the broad affidavit requirement smuggled the requirement, Trojan Horse fashion, and without the words "product liability," into the body and the caption of the more limited Medical Malpractice Reform Act of 1987, which begins its much less ambitious caption with: "To provide substantive and comprehensive reforms affecting claims for medical malpractice." Ga. L. 1987, p. 887; 1 H. Jour. 1189. Had the words "product liability" remained in the affidavit requirement and had they accompanied the words "professional malpractice" in the caption of the Medical Malpractice Reform Act, a legislator, upon reading the caption, might have been reminded of the broad affidavit requirement defeated as part of the Tort Reform Act. The words "product liability" were possibly deleted for just that reason. Given the medical malpractice reform orientation of the caption of the Medical Malpractice Reform Act, and given the deletion of the words "product liability" from the rejected provision of the Tort Reform Act, the majority's reliance on the legislative history of the affidavit requirement in the Tort Reform Act to conclude that citizens and legislators received adequate notice from the caption of the Medical Malpractice Reform Act is misplaced.

Moreover, the 1989 amendment to the 1987 Act, which refers to OCGA § 9-11-9.1 as requiring an affidavit in *medical* malpractice actions, supports the conclusion that many legislators believed that the Act applied to medical malpractice actions only. The majority opinion states that we have already rejected this argument. This is not so. In *Greene*, supra, 259 Ga., which involved only a question of statutory construction, we simply found that the medical malpractice caption in the 1989 amendment had to be construed in light of the plain language of OCGA § 9-11-9.1 and in light of prior cases interpreting the Act. We did not consider, as we do now, the probative value of the 1989 amendment on the issue — presented in this case for the first time — whether the short title and caption of the Act gave adequate notice of the scope of § 9-11-9.1.

Similarly, the Majority is off the mark in chastising the dissent for "ignor[ing] the rule of statutory construction that we must construe a statute as valid when possible." Majority, pp. 822-823. Clearly, however, the dissent properly ignores rules of statutory construction because the issue presented by this case does not involve the construction of § 9-11-9.1 but whether the title of the Act gave adequate notice of the broad scope of that statute.

Furthermore, I would like to point out that the majority opinion

is internally inconsistent. By concluding that it would be "manifestly unfair" to allow Reid Lutz's complaint to be dismissed with prejudice because of the unclear state of this law, the majority is implicitly holding that the title of the 1987 Act did not give citizens, not even ones represented by able members of the bar, adequate notice. We reached a similar conclusion in *Kneip v. Southern Engineering Co.*, 260 Ga. 409, 411 (4) (395 SE2d 809) (1990).

However laudable the purpose of reforming other types of malpractice actions, both good government and our state constitution require that the titles of our laws give citizens and their legislators adequate notice of the actual substance of laws to whose passage they give assent. We so held in the face of other praiseworthy provisions, in *Fortson v. Weeks*, supra, 232 Ga. 472, and *Carsello v. State*, 220 Ga. 90 (137 SE2d 305) (1964).

Since the citizens of Georgia and their legislators were not fairly apprised of OCGA § 9-11-9.1's true breadth, I conclude that the application by our courts of OCGA § 9-11-9.1 to other than medical professional malpractice actions, despite being warranted by the plain language of that provision, nevertheless is unconstitutional under the Constitution of the State of Georgia, Art. III, Sec. V, Par. III. *Fortson*, supra, 232 Ga. at 473, 474-475.

I, therefore, must respectfully dissent to the majority opinion in this case.

DECIDED MARCH 8, 1993.

*Brannen, Searcy & Smith, Joseph J. Berrigan, Wayne L. Durden,* for appellants.

*Wiseman, Blackburn & Futrell, James B. Blackburn, Jr., Douglas M. Robinson, Oliver, Maner & Gray, James L. Pannell,* for appellee.

*Alston & Bird, G. Conley Ingram, Robert D. McCallum, Jr., Daniel A. Kent, Parker, Johnson, Cook & Dunlevie, Robert P. Constantine, Jr., Everett W. Gee III, Richard L. Greene,* amici curiae.