## 67657. GOODLETT v. RAY LABEL CORPORATION.

BIRDSONG, Judge.

The appellant seeks relief from a jury verdict and judgment against him for $3,037.31 actual damages and $3,962.69 punitive damages. The trial court denied his motions for directed verdict and judgment n.o.v.

The suit of appellee Ray Label Corp. ("Ray Label") against appellant James Goodlett is based upon appellant's alleged individual assurance of payment for a shipment of labels to the Genie Corporation ("Genie"), a packaging and processing company of which appellant was vice-president. Ray Label had dealt with Genie for a number of years, always billing and receiving payment from Genie. Genie, as a "middle-man" packaging and processing company, had contracts or agreements with a number of different companies manufacturing different products, some of which Genie marketed.

It is conceded that the obligation sued upon here was originally that of the Genie Corporation. Ray Label does not contend that appellant made a personal guarantee, as there is no evidence in writing that appellant made an independent personal undertaking, so as to comply with the statute of frauds. *Southern Coal &c. Co. v. Randall*, 141 Ga. 48 (80 SE 285). Rather, the alleged liability of appellant is based upon his alleged fraud in promising personal payment without present intention to perform (*Middlebrooks v. Lonas*, 246 Ga. 720 (272 SE2d 687)), as the inducement for Ray Label to ship the labels.

Appellant's son Thomas Goodlett (the owner and president of Genie) was sued upon the same obligation, but the trial court, unable to find any evidence of a personal promise by Thomas Goodlett, granted him a directed verdict.

This lawsuit originally contained counts against Genie for other shipments of labels, but the shipment for which appellant was personally sued and found liable was one for which appellant had signed the shipping invoice as receipt. Ray Label contended, and its selling agent testified, that appellant induced Ray Label to ship this particular order by assuring the agent "as soon as they got paid from Sta-Green he would personally see that I got a check." The agent testified appellant did not tell him appellant would pay from his own funds, but rather the agent was "under the impression" that payment would be from appellant's pocket; otherwise, the agent testified, he would not have shipped labels to Genie because of that company's "current credit condition." The agent testified that he attempted to get appellant to let Ray Label bill the third-party manufacturer (Sta-Green, a fertilizer manufacturer) directly, but that appellant said it was "part of the package" that Genie would bill Sta-Green and as soon as Sta-Green paid Genie, appellant "would personally see that [Ray Label] got a check."

Shortly thereafter, appellant altered Ray Label's invoice before forwarding it to Sta-Green to get payment for 10,000 more labels than were shipped. Genie was eventually paid for the correct number of labels but never paid Ray Label. There is some evidence that Genie was in some financial trouble at the time. When the business ultimately failed, most of Genie's assets went to a secured creditor although appellant and his son received a salary payment. *Held*:

1. Normally, fraud cannot be predicated on statements which are in the nature of promises as to future events. *Warner v. Jeter*, 115 Ga. App. 6 (153 SE2d 626). The well recognized exceptions to this rule are promises made without present intent to perform, which is a misrepresentation of a present state of mind (*Middlebrooks*, supra), and promises made as an inducement to enter a contract. *Insilco Corp. v. First Nat. Bank of Dalton*, 156 Ga. App. 382 (2) (274 SE2d 767). Both of these exceptions to the general rule require the promise (or concealment) be made in a manner as to deceive and mislead. "In all cases of deceit [fraud], knowledge of the falsehood constitutes an essential element. . . . A fraudulent or reckless representation of facts as true, when they are not, if intended to deceive, is equivalent to a knowledge of their falsehood. . . ." OCGA § 51-6-2 (b). "To support an action for deceit, the misrepresentation must be either known at the time to be false, or recklessly made with the intention of deceiving the opposite party." *Insilco Corp.*, supra, p. 384. We are constrained to find that there is evidence to support a finding that, when

appellant assured Ray Label it would be paid and thereby induced Ray Label to ship the labels, appellant did so knowingly and recklessly with the intention to deceive and with the intention not to pay. The question of intent is in all cases the dominion of the fact finder; on appeal, the presumption lies in favor of the verdict where there is any evidence to support it. See *Cohutta Mills v. Bunch*, 166 Ga. App. 395, 397 (304 SE2d 431).

2. The charge on similar transactions was not authorized by the evidence. There was no evidence of transactions *similar* to the one sued for, but at best there was only evidence of inferrably *related* transactions. In particular, the inferrably related transaction was appellant's altering of Ray Label's invoice before appellant submitted it to Sta-Green.

3. The trial court erred in charging the jury that "an authorized representative who signs his name to an instrument is personally obligated if the instrument neither names the person represented, nor shows that the representative signed in a representative capacity, except as otherwise established between the immediate parties; or if the instrument does not name the person represented, but does show that the representative signed in a representative capacity."

The only signature pertinent in this case is appellant's signature on the Ray Label shipment invoice as the person who "received" the shipment. It in no way bound appellant personally on the obligation, nor served as evidence of any personal obligation. Primarily because Ray Label attempted to bind appellant on the debt through this signature, the charge was highly prejudicial and requires reversal. It is not harmless error because the evidence in the case does not demand a finding that when appellant promised Ray Label it would get its money, he did so wilfully or recklessly *with intent to deceive. Insilco Corp.*, supra.

The jury could as well have found that Genie was not insolvent at the time but operated seasonally and on credit and was in fact expecting large profits; that appellant's refusal to let Ray Label bill Sta-Green direct was no more than Genie's usual and customary method of operation as a middleman; that appellant's subsequent alteration of the invoice before submitting it to Sta-Green was an unconnected act committed in a pique at Sta-Green for having reneged on a large order and ultimately insuring Genie's business failure. The evidence in this case pointing to fraud or actual intention to deceive when appellant "induced" Ray Label to provide labels, is by no means overwhelming but is authorized by inference and the cumulation of circumstances. The slightest misleading error in the charge might have contributed to the verdict, and the charge implying that appellant's signature on the invoice as having received the merchandise would bind him for the debt of Genie was not only misleading, but incorrect.

4. In the context of this case, it was error to charge that "fraud may be actual or constructive. In other words, actual fraud consists of any kind of device by which another is deceived. Constructive fraud consists of any act or commission or omission contrary to legal or equitable duty, trust, or confidence which another person has a right to rely on and which injuries such other people may suffer. Actual fraud implies moral guilt, while constructive fraud may be consistent with innocence."

Appellant either committed actual fraud, i.e., he intended to deceive when he told Ray Label it would "get its money" and in so doing made a personal promise to pay, or he did not. If appellant's actions were consistent with innocence, he did not intend to deceive and did not commit actual fraud. Constructive fraud (OCGA § 23-2-51) is not involved in this case. In some cases the charge on constructive fraud may be, if not authorized, at least harmless or not misleading. See *Ga.-Car. Brick &c. Co. v. Brown,* 153 Ga. App. 747, 755 (266 SE2d 531). But in this case, it tends to authorize a finding that appellant may have "innocently," and without intent to deceive, bound himself to pay the debt of another. This he could not do except in writing (which he did not) or, there being no relationship of trust between the parties, by actual fraud. *Southern Coal,* supra; *Middlebrooks,* supra. The charge requires a new trial, as it tends to mislead the jury to a finding of liability merely for Goodlett's failure to pay a debt "contrary to . . . equitable duty, trust, or confidence."

5. The trial court erred in charging the law relating to preferential unsecured payments to other creditors (not themselves), there being no such evidence in the case.

6. In the circumstances of this case, the trial judge erred in refusing to charge the statute of frauds as it relates to promises to pay the debt of another. The jury should have been instructed that since appellant made no promise in writing, he would ordinarily not be liable for the corporation's debt unless he made the promise with intent to deceive. As we view it, the evidence in the case is otherwise too susceptible to the imposition of an obligation upon appellant upon the mere alleged promise alone.

7. The trial court erred in permitting Ray Label's president to answer over objection, his counsel's question "whether or not, if you personally indicate that you would pay a bill, whether you would be liable for it?" (Of course, to this, the witness answered "yes.") Ray Label contends on appeal that, as the trial court ruled, the appellant invited the question and waived any objection to it, by earlier testifying to an opposite conclusion, i.e., that "ordinarily an officer and director of a corporation would not be liable for the debts of the corporation." (*Sikes v. Wilson,* 74 Ga. App. 415 (39 SE2d 902) was cited for this proposition.) Waiver of objection might seem a logical rule in

some cases but we fail to see why the appellee should be allowed to testify to incompetent, incorrect evidence merely because he earlier declined to object to the other party's equally incompetent (although in this case correct) evidence. Incompetent evidence from one party never can cancel out or authorize incompetence from another; the duty is on each party to object. *Sikes*, supra, does not stand for a contrary conclusion; the rule usually refers to the admission of competent or legally admissible evidence by a party who subsequently objects to admission of the same evidence. See *Robinson v. State*, 229 Ga. 14, 16 (189 SE2d 53).

*Judgment reversed. Quillian, P. J., concurs. Carley, J., concurs in the judgment only.*

DECIDED JUNE 27, 1984.

*F. Houser Pugh*, for appellant.
*Richard A. Childs*, for appellee.