A98A1193. PLANE v. UNIFORCE MIS SERVICES OF GEORGIA, INC. et al.
(503 SE2d 621)

BLACKBURN, Judge.

Glenn R. Plane sued Uniforce MIS Services of Georgia, Inc. d/b/a Brannon & Tully, Inc. (Brannon & Tully), Christine Scheurer, Kalik Enterprises, Inc., and Vinson A. Brannon, asserting claims of fraud and breach of contract. The trial court granted defendants' motion for summary judgment, and Plane appealed. In *Plane v. Uniforce MIS Svcs. of Ga.*, 223 Ga. App. 731 (479 SE2d 18) (1996), we affirmed the grant of summary judgment on the contract claim, but reversed the grant of summary judgment on the fraud claim. The case then proceeded to a jury trial on the fraud claim, as well as on Plane's claim for attorney fees under OCGA § 13-6-11. At the close of Plane's case, the trial court granted a directed verdict as to the individual defend-

ants, Brannon and Scheurer. The jury returned a verdict against the remaining defendants, awarding $10,000 in damages and $23,000 in attorney fees. The trial court subsequently granted defendants' motion for judgment n.o.v. with respect to the attorney fees claim. Plane now appeals the trial court's grant of directed verdict and judgment n.o.v.

"When considering whether the trial court erred by [granting] motions for directed verdicts and motions for judgment n.o.v., we review and resolve the evidence and any doubts or ambiguities in favor of the verdict [or, in the case of a directed verdict, in favor of the party opposing the motion for directed verdict]; directed verdicts and judgments n.o.v. are not proper unless there is no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom demands a certain verdict. Thus, a judgment n.o.v. may be granted only when, without weighing the credibility of the evidence, there can be but one reasonable conclusion as to the proper judgment. If the evidence is conflicting, or if insufficient evidence exists to make a 'one-way' verdict proper, judgment n.o.v. should not be granted. Further, when considering these motions, trial and appellate courts must view the evidence in the light most favorable to the party securing the jury verdict." (Citation and punctuation omitted.) *Dunaway v. Parker*, 215 Ga. App. 841, 849 (4) (453 SE2d 43) (1994).

The essential facts surrounding Plane's fraud claim were summarized in our prior opinion as follows: "In February or early March 1994, Plane entered into employment discussions with representatives from [Brannon & Tully], a firm that provided temporary technical consultants to corporate clients such as BellSouth. Although employed by Brannon & Tully, these technical consultants worked at the corporate client's offices on specific projects for and at the direction of the client. Before Brannon & Tully hired a consultant, that individual interviewed with the prospective client, which made final decisions regarding the consultants they wished to use and how long those consultants would remain on a project.

"Plane's employment discussions with Brannon & Tully concerned a possible consulting position at BellSouth Mobility ('BellSouth'). During these discussions, Plane interviewed at BellSouth's offices with Tom Weincko, who, although not employed by BellSouth, was interviewing consultants for the position. Weincko told Plane that, contingent on clearing up any conflict with his then-current employer and discussing compensation with Brannon & Tully, Plane 'had the job' with BellSouth. According to Plane, Brannon & Tully representatives subsequently contacted him and stated that Brannon & Tully had 'come to an agreement with BellSouth Mobility; the contracts were signed, and if (he) wanted the job, at (his) leisure (he

should) come and sign (an employment) contract with (Brannon & Tully).'

"On March 29, 1994, Plane entered into an at will employment contract with Brannon & Tully. Pursuant to this contract, Brannon & Tully initially assigned Plane to work with BellSouth. The contract further provided that Brannon & Tully would pay Plane $37 per hour based upon the number of hours Plane worked for clients. Plane gave his notice of resignation to his then-current employer on March 30, 1994, and planned to begin work with Brannon & Tully on April 18, 1994.

"According to appellees, Brannon & Tully believed that a consulting position existed at BellSouth for Plane. Several days prior to his start date, however, Plane learned from Weincko that no consulting job was available at BellSouth and that Brannon & Tully did not have an agreement with BellSouth to provide a consultant for such a position." *Plane*, supra at 733.

In reversing the grant of summary judgment on the fraud claim, we stated as follows: "According to Plane, Brannon & Tully representatives informed him before he executed his employment contract that Brannon & Tully had come to an agreement with BellSouth and 'the contracts were signed.' Yet, the record reveals that Brannon & Tully and BellSouth never signed a written contract regarding the anticipated position. In fact, appellee Brannon testified that Brannon & Tully typically relied upon verbal confirmation from a client regarding the availability of a consulting position. From this evidence, a jury could find that Brannon & Tully representatives misrepresented, either intentionally or recklessly, the existence of a signed contract between Brannon & Tully and BellSouth.

"We further conclude that a jury could find intent to deceive. Plane testified that these same Brannon & Tully representatives 'badgered' him with numerous telephone calls about interviewing for the BellSouth position and told him that he should not turn down such an opportunity. Even if the representatives believed that Plane had the position at BellSouth, a jury could determine that they intentionally or recklessly misrepresented the existence of an executed agreement with BellSouth to help convince Plane to sign a contract with Brannon & Tully. . . . The record presents sufficient evidence from which a jury could find a knowing misrepresentation intended to deceive." Id. at 734-735 (2)

1. In his first enumeration, Plane contends that the trial court erred in directing a verdict as to the individual defendants, Brannon and Scheurer. Defendants, however, contend that there was no evidence that either of these individuals was involved in the misrepresentation about the existence of a written contract with BellSouth.

With respect to Scheurer, there was some evidence from which a

jury could conclude that she was involved in any misrepresentation that may have occurred. Plane testified that, after his interview with Weincko, he had a discussion with Nancy Thompson of Brannon & Tully regarding the status of negotiations with BellSouth. Subsequently, he had another three-way conversation with Thompson, Scheurer, and Tracy Adams, in which "they said all the paper work is done, contract's been signed we got for you at thirty-seven dollars an hour. Come in and sign the contract with us. You have got the job." Plane testified that all three of the other parties said that all of the paperwork was signed. Scheurer also told Plane that the BellSouth job was a great opportunity for him and would give him a good career. Plane then went into Brannon & Tully's offices and signed an employment contract. The contract was signed by Scheurer on behalf of Brannon & Tully.

In our prior decision, we held that the misrepresentation about the existence of a written contract with BellSouth could form the basis of a fraud claim. With respect to Scheurer's participation in such misrepresentation, the evidence at trial was not materially different from the evidence before us in our earlier decision. The jury was authorized to conclude that Scheurer intended for Plane to rely on such misrepresentation by leaving his current job and signing an employment agreement with Brannon & Tully. Accordingly, we must conclude that there was some evidence from which the jury could have found against Scheurer on the fraud claim, and that the trial court therefore erred in granting a directed verdict as to Scheurer.

With respect to Brannon, however, Plane fails to point to any evidence adduced at trial showing that he was involved with, or aware of, the misrepresentation that Brannon & Tully had a written agreement with BellSouth relating to Plane. The only evidence pointed to by Plane with respect to Brannon was that, when Plane came in to sign the employment contract, Brannon congratulated him and told him he had a great career ahead of him. This evidence does not show that Brannon participated in or was aware of any misrepresentation, which is the basis of Plane's fraud claim. Although Brannon was an officer and owner of the corporation, this fact alone does not render him personally liable for torts committed by the corporation or its employees. See *Jennings v. Smith*, 226 Ga. App. 765, 766 (1) (487 SE2d 362) (1997). Accordingly, the trial court correctly granted a directed verdict as to Brannon.

2. In his second enumeration, Plane contends that the trial court erred in granting a judgment n.o.v. with respect to his claim for attorney fees. We agree.

In its ruling on defendants' motion for judgment n.o.v., the trial court stated that, "[c]onsidering the evidence in the light most favorable to [Plane], the evidence in this case was that, at most,

Defendants were not vigilant as they should have been in making certain that a BellSouth job for [Plane] truly existed before he resigned from his current position. . . . No evidence was presented of bad faith by any Defendant, nor was any evidence presented that any Defendant was stubbornly litigious or caused the Plaintiff unnecessary trouble and expense."

As discussed above, however, the jury was authorized to conclude that defendants committed fraud by intentionally misrepresenting the existence of a written contract with BellSouth in order to induce Plane to leave his current job. "It is well established as the law of this state that every intentional tort invokes a species of bad faith and entitles a person so wronged to recover the expenses of litigation including attorney fees. Moreover, bad faith is a question for the trier of fact to be determined from consideration of the facts and circumstances in the case." (Citation and punctuation omitted.) *Hudspeth v. A & H Constr.*, 230 Ga. App. 70, 72 (3) (a) (495 SE2d 322) (1997). As the jury was authorized to find fraud, it was also authorized to find bad faith, and the trial court therefore erred in granting judgment n.o.v. with respect to the claim for attorney fees.

*Judgment affirmed in part and reversed in part. Birdsong, P. J., and Eldridge, J., concur.*

DECIDED JUNE 3, 1998.

*Clifford H. Hardwick*, for appellant.
*Silfen, Segal, Fryer & Shuster, Keith E. Fryer*, for appellees.

