## A03A1213. HARRELL et al. v. FEDERAL NATIONAL PAYABLES, INC.
### (591 SE2d 374)

RUFFIN, Presiding Judge.

Federal National Payables, Inc. (FNP) sued Melton and Deborah Harrell (the Harrells), asserting claims under a guaranty agreement. The Harrells counterclaimed, alleging that FNP failed to honor its agreement to provide funding to a company formed by Mr. Harrell. The trial court granted FNP's motion for summary judgment as to Counts 4 and 5 of the complaint, and FNP dismissed the remainder

of the complaint.[1] Thereafter, the court entered an order granting FNP's motion for summary judgment as to damages and denying the Harrells' motion to strike the supplemental affidavits in support thereof. The Harrells appeal both orders. For reasons that follow, we affirm the grant of summary judgment as to liability, but reverse the grant of summary judgment as to damages.

Summary judgment is appropriate where the evidence of record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[2] On appeal, we review a trial court's grant of summary judgment de novo.[3]

Viewed in this manner, the record shows that Melton Harrell was the founder and president of Intown Properties, Inc. (ITP), a real estate management company. In the mid to late 1990s, FNP, a factoring company, began purchasing accounts receivable from ITP. ITP's receivables were generated through its contracts with the U. S. Department of Housing and Urban Development (HUD).

In mid-1998, Melton Harrell formed Intown Management Group (ITMG) as a totally separate entity to bid on new HUD contracts with which ITP had not been involved. Melton Harrell was the chairman and president of ITMG.

In November 1998, FNP sent Melton Harrell a letter, addressed to him in his capacity as president of ITP, extending a $10 million line of credit to "Intown," which is defined in the letter as Intown Properties, Inc.

In March 1999, FNP agreed to provide ITMG with an accounts receivable purchases funding line of $2.5 million. FNP later agreed to increase its level of commitment to $3.5 million.

On June 1, 1999, FNP and ITMG entered into a Purchase Agreement which set forth FNP's remedies in the event that ITMG sold FNP a receivable which was "ineligible," i.e., one which there might be a dispute over or might otherwise not be timely paid. The Harrells guaranteed the debts of ITMG under the Purchase Agreement by signing a personal guaranty agreement, which is now the subject of this lawsuit.

On September 21, 1999, HUD terminated all of its contracts with ITMG due to deficient performance. On August 9, 2000, FNP sent demand letters to each Harrell, notifying them that ITMG was in default under the Purchase Agreement for $5,023,353.73 in

---

[1] FNP's dismissal of the remaining counts of the complaint converted FNP's motion for partial summary judgment into a full motion for summary judgment.

[2] OCGA § 9-11-56 (c).

[3] See *Moore v. ECI Mgmt.*, 246 Ga. App. 601 (542 SE2d 115) (2000).

accounts receivable and that the Harrells were liable for these debts pursuant to the personal guaranty agreement.

On August 24, 2000, FNP filed suit against the Harrells, claiming damages under the guaranty agreement. The Harrells counterclaimed, asserting that FNP had breached its obligation to provide a $10 million line of credit to ITMG, that the breach caused the demise of ITMG, and that the Harrells were thus relieved of their obligations under the guaranty agreement.

On February 15, 2002, the trial court entered summary judgment for FNP as to liability and stated that it would hold a hearing on FNP's damages at a later date. FNP subsequently filed a motion for summary judgment as to damages, attaching the affidavit of Joseph Sillay, the president of FNP, in support thereof. In their response to the motion, filed on July 15, 2002, the Harrells did not challenge the sufficiency of the affidavit. At oral argument on September 23, 2002, however, the Harrells moved to strike the affidavit, arguing that the affidavit failed to provide the necessary foundation for the business records exception to the hearsay rule[4] and that it made conclusory statements with respect to attorney fees.

The court acknowledged that the affidavit did not contain the "magic words" under the business records exception, but noted that the Harrells had not previously objected to the affidavit; rather, they had conceded that the calculations were correct. The court also acknowledged that it was a minor error and that the affidavit could be amended. FNP argued that the Harrells' motion to strike was untimely and requested that the court, if it determined that the affidavit was insufficient, allow FNP to file supplemental materials in support of summary judgment. On October 9, without leave from the court, FNP filed an amended affidavit of Sillay, as well as additional affidavits in support of attorney fees.

On October 15, the Harrells filed a motion to strike the supplemental affidavits, alleging that the affidavits were untimely. The court denied the motion to strike and granted summary judgment to FNP.

The Harrells appeal on several grounds, asserting that the trial court erred by: (1) granting FNP's motion for summary judgment as to liability, (2) granting FNP's motion for summary judgment as to the Harrells' counterclaim, (3) granting FNP's motion for summary judgment as to damages, and (4) denying the Harrells' motion to strike the affidavits submitted by FNP in support of its motion on damages.

---

[4] See OCGA § 24-3-14.

1. The Harrells do not dispute the terms of the guaranty agreement. Instead, they argue that the trial court erred in granting summary judgment because there is a question of fact as to whether FNP agreed to provide a $10 million line of credit to ITMG and whether it breached that agreement. At the crux of this argument is the Harrells' assertion that FNP's failure to provide these funds to ITMG caused the demise of ITMG, created the Harrells' liability under the guaranty agreement, and thus relieves the Harrells of their obligations under the agreement.

In support of their argument, the Harrells direct our attention to the November 1998 line of credit commitment letter, whereby FNP extended a $10 million line of credit to ITP.[5] The Harrells contend that the letter extended the line of credit to ITMG, not ITP. They also assert that the commitment letter is ambiguous in that the "Intown" referred to in the letter could mean ITP or ITMG and that if the letter is ambiguous, we should turn to parol evidence to determine the letter's meaning.

While parol evidence is admissible to explain an ambiguity in a contract,[6] we disagree that the commitment letter is ambiguous. The letter is addressed to Melton Harrell as president of Intown Properties, Inc., and it clearly defines "Intown" as "Intown Properties, Inc.," not ITMG. Because there is no ambiguity, we do not look outside the commitment letter to determine its meaning.[7] And because there is no question of fact as to whether the Harrells are liable to FNP on the guaranty agreement, we find that the trial court did not err in granting summary judgment to FNP as to liability.

2. The Harrells also assert that the trial court erred in granting FNP's motion as to the Harrells' counterclaim for breach of contract. The Harrells' counterclaim is premised once again on the Harrells' contention that the $10 million line of credit was intended for ITMG. Because we have already determined that there was no ambiguity in the commitment letter and no question of fact with respect to the Harrells' obligations under the guaranty agreement, we find no error.

3. In their third enumeration of error, the Harrells assert that the trial court erred in granting FNP's motion for summary judgment because the original affidavit in support of FNP's motion was deficient. We agree. "All hearsay evidence, unsupported conclusions, and the like, must be stricken or eliminated from consideration in a motion for summary judgment."[8] The original affidavit of Sillay is

---

[5] The Harrells' defenses of lack of consideration, duress, and unclean hands, among others, are also based on this commitment letter.

[6] See *Andrews v. Skinner,* 158 Ga. App. 229, 230 (279 SE2d 523) (1981).

[7] See id.

[8] (Punctuation omitted.) *Sherrill v. Stockel,* 252 Ga. App. 276, 278 (557 SE2d 8) (2001).

deficient because it references and relies upon attached documents and does not satisfy the business records exception to the hearsay rule applicable to those documents.[9] Our finding that the affidavit is deficient, however, does not end our inquiry. We must now turn to the supplemental affidavits filed in support of FNP's motion for summary judgment.

4. In their fourth and final enumeration of error, the Harrells argue that the trial court erred in denying the Harrells' motion to strike as untimely the supplemental affidavits. We agree. OCGA § 9-11-56 (c) requires that a motion for summary judgment be filed "at least 30 days before the time fixed for [a] hearing." And pursuant to OCGA § 9-11-6 (d), any affidavits in support of a motion must be served at the time the motion is served, unless the court exercises its discretion under OCGA § 9-11-6 (b) to permit later service. Subsection (b) provides:

> When . . . an act is required or allowed to be done at or within a specified time, . . . the court for cause shown may at any time in its discretion (1) with or without motion or notice, order the period extended if request therefor is made before the expiration of the period originally prescribed or as extended by a previous order, or (2) upon motion made after the expiration of the specified period, permit the act to be done where the failure to act was the result of excusable neglect.

Here, FNP's filing of the supplemental affidavits after the hearing was clearly outside the time limit, and although it requested permission from the court to file supplemental material, it made no attempt to show excusable neglect as required by subsection (b). Therefore, FNP has failed to proceed in a manner which would permit the trial court to exercise its discretion under subsection (b).[10] But what is more important, and as we have previously found, "any order allowing the filing of [a] movant's affidavit[ ] after the motion for summary judgment [has] already been filed, without also ensuring that the opposing party [has] 30 days from the time allowed to respond, [is] highly suspect if not fatally defective."[11]

The doctrine of harmless error does not apply here since, pretermitting the question of whether summary judgment would have been proper had the supplemental affidavits been timely submitted, summary judgment is clearly improper without consideration

---

[9] See OCGA § 24-3-14.
[10] See *Wall v. C & S Bank*, 145 Ga. App. 76, 78-79 (243 SE2d 271) (1978).
[11] Id. at 79, n. 2.

of these affidavits since the original affidavit was deficient.[12] Thus, we find that FNP has failed to carry its burden as a matter of law with respect to damages, and accordingly, we reverse the grant of summary judgment as to damages.[13]

*Judgment affirmed in part and reversed in part. Smith, C. J., and Miller, J., concur.*

DECIDED NOVEMBER 13, 2003 —
RECONSIDERATION DENIED DECEMBER 2, 2003 — 

*Schreeder, Wheeler & Flint, John A. Christy, Nathan M. Wheat,* for appellants.
*Alston & Bird, Candace N. Smith,* for appellee.

---

[12] See id. at 78-79.
[13] See id.