## A05A1751. BTL COM LTD., COMPANY v. VACHON et al.

(628 SE2d 690)

BERNES, Judge.

Plaintiff BTL COM Ltd., Company ("BTL") appeals from the trial court's grant of summary judgment to defendants Reginald I. Vachon and John H. Gipson, Jr. Because we conclude that there is a genuine issue of material fact over whether defendants personally participated in the making of false misrepresentations that induced plaintiff to contract with defendants' company, we reverse.

Under OCGA § 9-11-56 (c), summary judgment is appropriate only when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. "A de novo standard of review applies to an appeal from a motion for summary judgment, and we review the evidence, with all reasonable conclusions and inferences drawn therefrom, in the light most favorable to the non-movant." (Citation omitted.) *Rabun & Assoc. Constr. v. Berry*, 276 Ga. App. 485, 485-486 (623 SE2d 691) (2005).

So viewed, the record reflects that on July 2, 2001, BTL entered into a Cooperative Venture Agreement with United Information Technologies, Inc. ("UIT") to provide telecommunication services between the United States and Nigeria (the "Agreement"). Reginald I. Vachon, chief operating officer of UIT, assisted in drafting the Agreement, actively participated in the negotiations over its terms, and executed the Agreement on behalf of UIT. John H. Gipson, Jr., president of UIT, also participated in negotiations over the Agreement and approved its final terms.

Under the Agreement, BTL and UIT would each have a 50 percent interest in the cooperative venture and would share equally in the net profits and liabilities. The Agreement further provided that UIT had already made a $500,000 investment in equipment and initial expenses to launch telecommunications traffic to Nigeria, and that BTL would invest $250,000 and obtain a joint interest in that equipment. In this regard, Paragraph 2 of the Agreement stated:

> The parties recognize and agree that UIT has made an investment in equipment and initial expenses in the cooperative venture of US$500,000.00 to launch termination of telecommunications traffic in Nigeria over 4E-1s and increased to 8E-1s and that one half of this investment or US$250,000.00 is to be matched by BTL. BTL shall make a payment of US$250,000.00 by wire transfer to UIT's account which shall be due upon the signing of this Agreement and said payment shall be for BTL's share of the equipment and expenses advanced by UIT to establish the telecommunications link between the USA and Nigeria. Thus, BTL and UIT

shall own the equipment jointly and shall recover the cost the equipment [sic] and the initial start-up expenses from the cash flow of the project by the end of the sixth month of the project.

Another paragraph of the Agreement, entitled "Equipment List," provided: "Attached hereto as Attachment 'B' is the list of equipment for the project." Attachment B contained two separate lists of specific pieces of telecommunications equipment — one list for the "US Side" and another for the "Nigeria Side" of the venture — with the quantities and costs of the different types of equipment itemized. Vachon and Gipson drafted the equipment list.

In accordance with the Agreement, BTL delivered $250,000 in United States currency to UIT as consideration for its 50 percent interest in the cooperative venture. However, telecommunications traffic with Nigeria was never established, and in November 2001, BTL severed its contractual relationship with UIT, demanding that its $250,000 initial investment in the cooperative venture be returned. No money or equipment was ever returned to BTL.

BTL filed suit against UIT and its three principal officers, Vachon, Gipson, and Gipson's father. BTL alleged claims for fraud, breach of contract, violation of Georgia's Racketeer Influenced and Corrupt Organizations Act ("RICO"), money had and received, and attorney fees.

BTL's claims against UIT remain pending for adjudication in the trial court. The trial court granted summary judgment to Gipson's father on all counts after finding that there was no evidence that he personally participated in any of the alleged wrongdoing and no grounds for piercing the corporate veil. That order was affirmed by this Court in an unpublished opinion and is not the subject of this appeal.

Appellees Vachon and Gipson also moved for summary judgment. On March 12, 2004, the trial court granted summary judgment to appellees as to any alleged misrepresentations made prior to execution of the Agreement based on a merger clause, and as to any theories of personal liability based upon piercing the corporate veil, joint venture, or principal-agent. However, the trial court denied summary judgment to appellees on any potential claims of misrepresentations made within the Agreement itself or after its execution.

Thereafter, the case was transferred to a different superior court judge, and appellees filed second motions for summary judgment. After oral argument, the trial court entered an order on March 25, 2005 granting, without opinion, summary judgment in favor of appellees on all counts of the complaint. It is from that order that BTL now appeals.

BTL argues that the trial court erred in dismissing its fraud claim against appellees Vachon and Gipson.[1] "The tort of fraud has five elements: (1) a false representation or omission of a material fact; (2) scienter; (3) intention to induce the party claiming fraud to act or refrain from acting; (4) justifiable reliance; and (5) damages." (Citation omitted.) *ReMax North Atlanta v. Clark*, 244 Ga. App. 890, 893 (537 SE2d 138) (2000). See also OCGA § 51-6-2 (a). Here, BTL contends that there was sufficient evidence of three separate false misrepresentations contained within the Agreement which induced it to enter into the Nigerian venture, and of appellees' personal cooperation and participation in the making of those misrepresentations with the requisite fraudulent intent, to support its fraud claim.[2]

In most circumstances, actionable fraud cannot be predicated on a promise contained in a contract because the promise is to perform some act in the future, and "[n]ormally, fraud cannot be predicated on statements which are in the nature of promises as to future events." (Citation omitted.) *Goodlett v. Ray Label Corp.*, 171 Ga. App. 377, 378 (1) (319 SE2d 533) (1984). See also *Buckley v. Turner Heritage Homes*, 248 Ga. App. 793, 795 (3) (547 SE2d 373) (2001). However, "[a]n exception to the general rule exists where a promise as to future events is made with a present intent not to perform or where the promisor knows that the future event will not take place." (Citation omitted.) Id. Additionally, if the particular statement at issue in the contract "was not a future promise but a present misrepresentation of fact," it is sufficient to support a claim for fraud. *Baker v. Campbell*, 255 Ga. App. 523, 527 (1) (a) (565 SE2d 855) (2002). See also *McCravy v. McCravy*, 244 Ga. 336, 337-338 (2) (260 SE2d 52) (1979); *Plane v. Uniforce MIS Svcs. of Ga.*, 223 Ga. App. 731, 734-735

---

[1] BTL has chosen not to appeal the trial court's dismissal of its claims for breach of contract, money had and received, or attorney fees brought against appellees. While BTL states in its appellate brief that it is appealing the trial court's ruling on its RICO claim, BTL does not support its position with any citations of authority or argument. Thus, any challenge BTL may have had to the dismissal of its RICO claim has been abandoned. Court of Appeals Rule 25 (c) (2); *Smith v. Lewis*, 259 Ga. App. 548, 549 (2) (578 SE2d 220) (2003).

[2] The issues of whether BTL reasonably relied on the representations contained in the Agreement or suffered damages as a result of those representations are not properly before us in this appeal. Although appellees now attempt to raise the issue of reasonable reliance in their appellate brief, appellees have waived this issue on appeal because they did not raise it in the trial court. See *Johnson v. Riverdale Anesthesia Assoc.*, 249 Ga. App. 152, 153 (1), n. 6 (547 SE2d 347) (2001) ("We do not consider arguments neither raised nor ruled on by the court below and that are asserted for the first time on appeal.") (citation and punctuation omitted). Furthermore, appellees do not provide any citations to the record to support their argument that BTL failed to exercise due diligence and thus unreasonably relied on the representations contained in the Agreement. "[A]ssertions in briefs not supported by evidence of record cannot be considered on appellate review." (Citation omitted.) *Rogers v. Coronet Ins. Co.*, 206 Ga. App. 46, 47 (1) (424 SE2d 338) (1992).

(2) (479 SE2d 18) (1996). With these principles in mind, we turn to BTL's three allegations of fraud.

1. Fraudulent Misrepresentation of Present Fact. BTL predicates its first allegation of fraud on UIT's representation in Paragraph 2 of the Agreement that "UIT *has made* an investment in equipment and initial expenses in the cooperative venture of US $500,000.00 to launch termination of telecommunications traffic in Nigeria."[3] (Emphasis supplied.) Significantly, by its plain language, the representation was not a future promise but a representation of present fact: UIT was representing that at the time the Agreement was executed, UIT had already invested $500,000 in equipment and initial expenses in connection with the Nigerian telecommunications venture. As such, we agree with BTL that the representation does not fall within the general rule barring fraud claims based on contractual promises. See *McCravy*, 244 Ga. at 337-338 (2); *Baker*, 255 Ga. App. at 527 (1) (a); *Plane*, 223 Ga. App. at 734-735 (2).

Furthermore, we agree with BTL that there was sufficient evidence in the record indicating that UIT's representation was false when made to create a genuine issue of fact over the issue. Although appellees submitted a spreadsheet that purported to show that UIT had spent over $500,000 purchasing equipment prior to the execution of the Agreement, Vachon conceded during his deposition that the

---

[3] Appellees argue that BTL relied on different contractual language as the basis for its fraud claim in its argument on summary judgment in the trial court. However, the record reflects that BTL relied on the same specific contractual language as a basis for its fraud claim during oral argument on the appellees' second motions for summary judgment. Thus, BTL is not attempting to raise a new basis for its fraud claim. In any event, "the issue in an appeal from the grant of summary judgment is whether the movant met the burden established by OCGA § 9-11-56 (c) and, in addressing that issue on appeal, the *non-moving* party is entitled to advance all arguments without regard to whether they were raised by way of objections below." (Emphasis supplied.) *American Central Ins. Co. v. Lee*, 273 Ga. 880, 883 (2) (548 SE2d 338) (2001).

Appellees further argue that BTL relied on different contractual language as the ground for its fraud claim in the allegations of its complaint. When BTL relied on this same contractual language during the oral argument hearing before the trial court, appellees did not object or otherwise argue that BTL was raising a new allegation of fraud different from that found in its complaint. Thereafter, in its order granting summary judgment to appellees, the trial court stated that its decision had been reached after considering all of the evidence and argument presented by the parties. "Although [BTL's] theory was not presented in the complaint, the pleadings are deemed amended to conform to the evidence presented, and we therefore deem it proper to consider this argument." *DeLoach v. Foremost Ins. Co.*, 147 Ga. App. 124, 125 (1) (a) (248 SE2d 193) (1978) (holding that plaintiff's new theory of misrepresentation raised for first time at summary judgment hearing would be considered by this Court, since complaint was deemed amended to conform to evidence presented at the hearing). See also *Porter v. Buckeye Cellulose Corp.*, 189 Ga. App. 818, 820 (2) (b) (377 SE2d 901) (1989) (complaint deemed amended to conform to evidence when trial court apparently considered and ruled upon new claims raised at the summary judgment stage); *Mazur v. Food Giant*, 183 Ga. App. 453, 454 (2) (359 SE2d 178) (1987) (complaint deemed amended to conform to evidence submitted in response to defendant's summary judgment motion).

spreadsheet was actually a combined list of equipment that had been purchased by UIT for all of its different telecommunications ventures. Both appellees further conceded that only a subset of the equipment listed on the spreadsheet was purchased in connection with the Nigerian venture. Indeed, Gipson specifically marked on the spreadsheet which pieces of equipment were purchased for the Nigerian venture, and his markings reflect that only a small portion of the equipment listed on the sheet was actually bought for that purpose. Additionally, a separate spreadsheet showing expenses associated with service contracts that UIT entered into as part of the Nigerian venture reflects that only a small number of those expenses were incurred *before* execution of the Agreement. Hence, both spreadsheets, taken together, can be construed in favor of BTL to reflect that UIT spent far less than $500,000 on equipment and expenses for the Nigerian venture before the Agreement was signed.

BTL also elicited testimony from Gipson which, construed in the light most favorable to BTL, reflected that portions of the equipment claimed to have been purchased and owned by UIT as part of its initial $500,000 investment were in fact owned by a third-party company that never transferred ownership to UIT. Gipson's testimony, combined with what was revealed in the spreadsheets, would allow a rational factfinder to conclude that UIT falsely represented that it had already invested $500,000 in equipment and initial expenses associated with the Nigerian venture at the time the Agreement was executed.

In turn, there was sufficient evidence indicating that appellees actively participated and cooperated in the alleged false misrepresentation, and did so with fraudulent intent. Although the Agreement was between BTL and UIT, a corporate officer may be held liable for a corporate tort when he cooperated or participated in the tort or directed it to be done. See *Jamal v. Hussein*, 237 Ga. App. 779, 785 (3) (515 SE2d 407) (1999); *Plane v. Uniforce MIS Svcs. of Ga.*, 232 Ga. App. 757, 760 (1) (503 SE2d 621) (1998); *Jennings v. Smith*, 226 Ga. App. 765, 766 (1) (487 SE2d 362) (1997). Here, there was evidence in the form of deposition testimony that Vachon was personally and intimately involved in drafting and negotiating the Agreement. There also was evidence in the form of deposition testimony that Gipson actively participated in drafting and negotiating the Agreement and gave his final approval to its terms.

Likewise, there was sufficient evidence of fraudulent intent by appellees. Ernest Tate, chief executive officer and general counsel of BTL, testified that after execution of the Agreement he traveled to Nigeria to confirm that UIT had bought the needed telecommunications equipment. Tate testified that appellees had informed him that upon his arrival in Nigeria, Zeyard Ibrahim, UIT's representative in

Nigeria, would be there to show him UIT's telecommunications equipment. However, when Tate arrived in Nigeria, Ibrahim was not there. Nor was Tate able to locate any telecommunications equipment in Nigeria at the sites where appellees had told him the equipment would be located. When Tate returned to the United States, he spoke with Ibrahim, who was then in Lebanon, to find out why he had not met him in Nigeria. According to Tate, Ibrahim informed him that appellees had instructed him to show Tate offices and equipment in Nigeria that did not belong to UIT, but Ibrahim had decided he would not participate in the planned deception. Ibrahim further stated that UIT did not have any telecommunication transmission facilities in Nigeria.

"[F]raud may be proved by slight circumstances," and "[w]hether a misrepresentation is fraudulent and intended to deceive is generally a jury question." (Citations and punctuation omitted.) *Plane*, 223 Ga. App. at 735 (2). Fraudulent intent at the time of contracting can be inferred based on subsequent conduct of the defendant that is unusual, suspicious, or inconsistent with what would be expected from a contracting party who had been acting in good faith. See, e.g., *Gunnin v. Dement*, 205 Ga. App. 631, 633-634 (2) (422 SE2d 893) (1992); *Miner v. Harrison*, 205 Ga. App. 523, 525 (2) (422 SE2d 899) (1992); *Hines v. Good Housekeeping Shop*, 161 Ga. App. 318, 319 (3) (291 SE2d 238) (1982). Therefore, Tate's testimony concerning his trip to Nigeria and discussion with Ibrahim was sufficient to create a genuine issue of material fact over whether appellees acted with fraudulent intent when they participated in the negotiations and approval of the Agreement.

For these reasons, we conclude that, contrary to the trial court's conclusion, BTL had an actionable claim for fraud based on the contractual representation that UIT had already invested $500,000 in equipment and initial expenses prior to execution of the Agreement. Resolution of this allegation of fraud should be left to the factfinder.

2. Fraudulent Promises of Future Action. BTL raises two additional allegations of fraud based on representations contained within the Agreement. First, BTL alleges that UIT falsely represented in Paragraph 2 of the Agreement that BTL would receive a joint ownership interest in all of the equipment previously purchased by UIT in return for BTL's $250,000 investment in the Nigerian venture. Second, BTL alleges that UIT falsely represented in the Agreement that it had or would eventually acquire all of the specific

equipment listed in Attachment B in order to effectuate the Nigerian venture.[4]

As an initial matter, the record reflects a genuine issue of material fact over whether UIT carried out either of these two promises. As to UIT's promise that BTL would receive a joint ownership interest in all the equipment purchased by UIT prior to execution of the Agreement, BTL presented evidence (as previously pointed out) that certain equipment that UIT had claimed was part of its initial investment was not even owned by UIT. BTL also elicited deposition testimony indicating that certain pieces of the equipment purchased by UIT had been sold off by UIT without BTL receiving any notice of the sale or any portion of the proceeds. As to UIT's promise that it would acquire the specific equipment listed on Attachment B to the Agreement, the equipment spreadsheet created by UIT (discussed supra), as well as the purchase invoices and shipment receipts for equipment purchased after execution of the Agreement, reflect that some of the equipment listed on Attachment B was never purchased. Furthermore, to the extent that some of the equipment was purchased, the evidence reflects that it was often of a different quantity and at a different cost than was represented on Attachment B.

Such evidence, standing alone, could not support a fraud claim, since the mere breach of a contractual promise to carry out some future action is insufficient to provide an actionable basis for fraud. *Buckley*, 248 Ga. App. at 795 (3). But, here there was additional evidence creating an inference that at the time the two promises at issue were made, appellees acted "with a present intent not to perform" or with knowledge that performance would not take place. Id. Specifically, Tate's testimony concerning his trip to Nigeria and his discussions with Ibrahim, if accepted as true (as it must be at this stage of the proceedings), equally supports an inference that appellees decided to include within the Agreement the two promises at issue, even though they never intended to fulfill those promises or knew that the promises would not be fulfilled. See, e.g., *Gunnin*, 205 Ga. App. at 633-634 (2); *Miner*, 205 Ga. App. at 525 (2); *Goodlett*, 171 Ga. App. at 378-379 (1); *Hines*, 161 Ga. App. at 319 (3).

---

[4] In their appellate brief, appellees do not contest that the parties viewed the equipment list attached to the Agreement as a contractual promise by UIT that in the future it would purchase the specific items in the list. In any event, to the extent that there was any ambiguity in the Agreement over this issue, there was parol evidence which would support interpreting the equipment list in this manner. See *Harrell v. Fed. Nat. Payables*, 264 Ga. App. 501, 504 (1) (591 SE2d 374) (2003) (noting that "parol evidence is admissible to explain an ambiguity in a contract"). In particular, Tate testified that the parties understood that the equipment list was a future promise by UIT to purchase the equipment on the list in carrying out the Nigerian venture.

Appellees' reliance on *Pacrim Assoc. v. Turner Home Entertainment*, 235 Ga. App. 761 (510 SE2d 52) (1998) is misplaced. In that case, unlike here, there was no evidence of conduct by the defendant after the contract was made that was unusual, suspicious, or inconsistent with what would be expected from a contracting party who had been acting in good faith. Rather, there was simply evidence that a few months after an oral agreement had been reached between the plaintiff and defendant, one of the defendant's employees developed "certain concerns" about the agreement and chose not to deliver a copy of it reduced to writing to the plaintiff for execution. See id. at 763-764, 767 (3).

In light of the record evidence, we conclude that in addition to its actionable fraud claim discussed in Division 1, BTL had an actionable fraud claim predicated on the contractual promise that BTL would be given a joint ownership interest in equipment previously purchased by UIT, and on the contractual promise that UIT would purchase the equipment listed in Attachment B. Therefore, the trial court's grant of summary judgment to appellees on BTL's fraud claim must be reversed.

*Judgment reversed. Blackburn, P. J., and Miller, J., concur.*

DECIDED MARCH 16, 2006.

*Herald J. A. Alexander*, for appellant.
*Smith, Gambrell & Russell, Edward D. Burch, Jr., Aaron P. Tady*, for appellees.

